WESTERN UNION TELEGRAPH COMPANY AND GULF, COLORADO &
SANTA FE RAILWAY COMPANY v. G. L. PHILLIPS.

No. 109.

1. Telegraph Company — Stipulated Notice of Claim. —A message which was forwarded to plaintiff, but through negligence of the telegraph company never delivered, was written on a form containing a printed stipulation, that "the company will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message." Plaintiff did not learn of the message until about three weeks after it was sent. *Held*, that the court erred in charging that plaintiff, for the purpose of giving the notice, was entitled to sixty days after he learned, or reasonably could have learned, that the message was sent. It should have been submitted to the jury to determine, under the facts of the case, whether the remaining time after plaintiff learned of the message was reasonably sufficient for him to have given the notice within the stipulated sixty days.

2. Jurisdiction of Federal Courts in the Indian Territory.—The Act of Congress of July 4, 1884, which provides that certain Federal courts shall have concurrent jurisdiction over all controversies, irrespective of amount, between the Gulf, Colorado & Santa Fe Railway Company and the Indian tribes and nations, and the inhabitants thereof, through whose territory said railway shall be constructed, does not deprive any other court of any jurisdiction it would have against such railway company, since the act does not confer exclusive jurisdiction on the courts therein named.

3. Jurisdiction—Comity of States.—Where a Texas railway corporation, doing business also in the Indian Territory, is guilty of negligence there, the rules of sound policy do not require that the courts of Texas should decline to entertain jurisdiction of a suit brought for damages of a personal character resulting from such negligence, especially where it is not clear that plaintiff is not also a citizen of Texas.

4. Lex Loci—Rule not Applicable—Tort and Violation of Contract.—The laws of the Indian Territory, wherein the defendant corporation

received for transmission the telegraph message which it negligently failed there to deliver, do not give jurisdiction to any of its courts over suits for damages in such cases; but they do not declare such contracts illegal, or render such act of negligence lawful.  *Held*, that the failure to provide a remedy there will not deprive the injured party of all right and remedy elsewhere for the violation of the contract, or for damages for personal injuries, recognized as such by universal law, resulting from such negligence; and the defendant being a Texas corporation, and the contract with which it identified itself by receiving the message having been entered into by its connecting line in Texas, the courts of this State will not withhold redress for its violation.

5. **Practice on Appeal—Separate Judgments Against Joint Defendants.**—In an action for damages against two defendants jointly sued, there was a separate verdict against each defendant.  There being reversible error in the record as to one of the defendants, but none as to the other, the appellee is permitted, on filing a release and dismissing suit as to the one defendant, to have an affirmance of the judgment as to the other; otherwise, the entire case must be reversed and remanded because of the error.

APPEAL from Cooke.  Tried below before Hon. D. E. BARRETT.

Sometime in 1887 appellee, with his family, he being then a citizen and resident of the State of Texas, moved into the Indian Territory, and engaged in farming on a claim purchased from parties residing there.  Early in June, 1888, appellee's wife, who had consumption, went to her father's house at Santo, in Palo Pinto County, Texas; and appellee, anticipating that she might grow worse, arranged with his father-in-law, J. C. Strickland, to telegraph him should this occur.  On June 24, 1888, J. C. Strickland delivered to his son, J. H. Strickland, to be taken to the telegraph office and sent to appellee, the following telegram:

"SANTO, TEXAS, June 24, 1888.

"*To G. L. Phillips, Ardmore, I. T.:*

" Your wife is much worse.  Come at once.

[Signed]  " J. C. STRICKLAND."

This telegram was written on a piece of letter paper, and at the bottom thereof was written the words, " Send in care of postmaster."  J. H. Strickland, at about 6:30 a. m. of the 24th of June, delivered this message to the agent of the Western Union Telegraph Company at Santo, and paid him the regular day charges, $1.50, for its transmission.  The agent of said telegraph company, in the presence of said J. H. Strickland, transcribed the message upon one of the company's blanks, and said Strickland read it over after it was so transcribed.  At the head of the blank upon which the message was so transferred, among other stipulations, was printed the following:  " The company will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message."

Vol. II. Civil—39

The day on which the message was delivered to the telegraph company as aforesaid was Sunday, and its office hours at Santo on said day were from 8 to 10 a. m. and from 4 to 6 p. m. The agent of the telegraph company at Santo started the message from that place at 6:25 p. m. of the day of its receipt, and it reached Kansas City at 6:44 p. m., over the line of said company. The message remained at Kansas City all night, and left there at 8:30 a. m., and reached Arkansas City, Kansas, at 8:34 a. m., and from there it was sent to Purcell over a line operated by the Atchinson, Topeka & Santa Fe Railway Company, and from Purcell to Ardmore over the line of the Gulf, Colorado & Santa Fe Railway Company. It reached Purcell a few moments after it left Arkansas City. At the time the message left Santo, another message was also sent by the operator to the agent at the delivering station as follows: "See mine of to-day and mail same at postoffice for delivery. [Signed] Stati;" which was the name of the agent at Santo.

The agent of the Gulf, Colorado & Santa Fe Railway at Ardmore, upon receiving the message, made no effort to deliver it, either by mailing at the postoffice or otherwise. There was no partnership or contract relation between the Western Union Telegraph Company and the Gulf, Colorado & Santa Fe Railway Company, at the time this message was received by the former, for the transmission and delivery of such messages, and it was stipulated upon the blank to which the message was transferred as above set forth, as follows: "And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination." When the message left the hands of the Western Union at Arkansas City, said company paid to the connecting line the charge for its transmission from said point to Ardmore. The Gulf, Colorado & Santa Fe Railway Company received the message at Purcell to be transmitted to Ardmore, both of which places are in the Chickasaw Nation, Indian Territory.

It was shown upon the trial, that the Constitution and laws of the Chickasaw Nation did not authorize the bringing of suits in the courts of that Nation for the collection of debts or recovery of damages such as are claimed in this case; and the following statute of that Nation was introduced in evidence with others, to-wit: "An act approved October 17, 1876. Be it enacted by the Legislature of the Chickasaw Nation, that as there never has been any law for the collection of debts from the Nation or from individuals, it is hereby enacted, that no courts of this Nation shall allow any case of indebtedness to be entered upon the records of said courts, except bonds and fines and such other indebtedness as provided by the laws of this Nation." It was not shown that it was not legal to make contracts for the transmission of telegrams in the Nation, but it was shown that no action would lie in the courts of such Nation to recover damages for a breach of such contract. What remedies, if any,

parties had under the laws of that Nation for the breach of ordinary contracts, does not satisfactorily appear.

Appellee's wife died on June 27, and was buried the next day, but by reason of the failure to deliver the message aforesaid, he did not hear of this until about the 4th of July following, when he received a letter notifying him thereof, and he immediately went to Santo, but did not learn that a telegram had been sent him for some ten days thereafter. Had he received the telegram either on the 25th or 26th of June, he could and would have reached his wife before her death. At the time the telegram was received at Ardmore by the operator, appellee lived some ten miles in the country, but he had arranged with the postmaster to send him the telegram immediately upon its receipt.

Upon the trial in the court below the jury returned the following verdict: "We, the jury, find for the plaintiff the sum of $1000 against the Gulf, Colorado & Santa Fe Railway Company; also $500 against the Western Union Telegraph Company." The verdict of the jury establishes that the Western Union Telegraph Company was guilty of negligence in not sending the message from Santo until 6:25 p. m. of the day on which it was received, and in holding the message all night at Kansas City; and it establishes that the Gulf, Colorado & Santa Fe Railway Company was guilty of negligence in not delivering the message after it was received at Ardmore. It is not shown by the evidence whether the agent of the last named company would have made any effort to deliver the message had it been received on the preceding day, nor is it clear from the evidence that the message could have been gotten through to Ardmore on that day. The amount of the verdict is well supported by the evidence.

The claim for damages was not presented by appellee until after the expiration of sixty days from the date of the message, but it was presented within sixty days after appellee learned that it had been sent.

[This statement accompanied the opinion.]

*A. H. Field*, for appellant Western Union Telegraph Company.—Plaintiff was not entitled to judgment, because his claim was not presented within sixty days from the time the message was sent, as required by the contract, and the court erred in its charge on this point. Tel. Co. v. Culberson, 79 Texas, 65; Rains v. Tel. Co., 63 Texas, 27; Gray on Com. by Tel., sec. 34.

*J. W. Terry*, for appellant Gulf, Colorado & Santa Fe Railway Company.—1. Congress, by the act granting the right of way, having fully provided a system of courts for administering relief between the inhabitants of the Territory and the railway company, it is manifestly against the sound policy of the government to have other courts entertain juris-

diction between the railway company and such inhabitants, which policy should be respected by the courts of this State. Morris v. Railway, 78 Texas, 17; Smith v. Ins. Co., 14 Allen, 343; Whart. on Confl. of Laws, sec. 478.

2. Unless the cause of action is recognized by the State or country where the wrongful act or omission occurred, no action can be maintained thereon in this State, for in such case no cause of action exists; and Texas can no more extend her common law into other countries, and thereby create causes of action, than she can extend her statutes into other countries and thereby create causes of action. Neither her common nor statutory law can properly operate beyond her own limits. Le Forest v. Toleman, 117 Mass., 109; Carter v. Good, 50 Ark., 156; Holland v. Park, Peck's Tenn. Rep., 151; McLeod v. Railway, 58 Vt., 727; Phillips v. Eyre, L. R., 4 Q. B., 225; Smith v. Condry, 1 How., 28; Needham v. Railway, 38 Vt., 294; Blad's case, 3 Swanst., 603; Navigation Co. v. Guillon, 11 Meeson & W., 877; Whitford v. Railway, 23 N. Y., 481; Stout v. Wood, 1 Blackf., 71; Wall v. Hoskins, 5 Ire., 177; Mahler v. Railway, 35 N. Y., 352; Story on Confl. of Laws, 747; Cool. on Torts, 471; Whart. on Confl. of Laws, 478; 2 Add. on Torts, sec. 44.

3. In a breach of contract, such damages only can be recovered as are allowed by the law of the place where the contract was made and where the breach occurred. Story on Confl. of Laws, sec. 304b; Field on Dam., sec. 214; Schofield v. Day, 20 Johns., 102; Archer v. Dunn, 2 W. & S., 327; 2 Kent's Com., 458–461.

*Potter, Potter & Mathis,* for appellee.—1. The Gulf, Colorado & Santa Fe Railway Company being a Texas corporation, chartered and doing business in Texas, and there being no courts in which the appellee could seek redress in the Indian Territory, it is not a question of comity as to whether he will be permitted to sue in Texas courts, but such courts are as much bound to protect his rights as if he had never been without her border. Morris v. Railway, 78 Texas, 17.

2. A right of action exists under universal law to recover for an injury inflicted upon the person of another by gross negligence in doing or failing to do a thing that the law required to be carefully done; and the injury being personal, the party inflicting the same may be sued and the recovery had therefor in any jurisdiction where found; and especially is this true where the suit is brought in the jurisdiction of the defendant's residence. Willis v. Railway, 61 Texas, 434; Rorer on Interstate Law, 154, 155; Garderner v. Thomas, 14 Johns., 135; 1 Cow., 355; McKennon v. Fisk, 1 How., 241.

3. The message not having been delivered to the addressee until nearly sixty days after it was sent, and the appellee not knowing that such message was sent until long after the date thereof, which was caused by the

failure of appellants to perform their duty, the sixty days stipulation could only apply and run from the date appellee knew of such failure. Railway v. Harris, 67 Texas, 166; Express Co. v. Darnell, 6 S. W. Rep., 765; 77 Va., 173-185; 44 Am. Rep., 494.

HEAD, ASSOCIATE JUSTICE.—Upon the trial below the court instructed the jury, "that the sixty days within which to make demand by appellant for his damages would not begin to run against him until the message was delivered to him, or from the date when for the first time he learned, or by the exercise of reasonable diligence could have learned, that such message had been sent to him;" and the telegraph company complains in its ninth assignment at the giving of this charge.

We believe this charge of the court was erroneous. We do not, however, think that this limitation must in all cases date from the sending of the message; but where knowledge of the sending of the message is received by the plaintiff long enough before the expiration of the sixty days after it was sent to enable him, with reasonable diligence, to make claim for damages as called for in the contract, he would be required to do so within that time; and where the evidence makes it doubtful as to whether or not such reasonable time remained after such message was forwarded to enable this to be done, the question should be submitted to the jury under appropriate instruction.

In several cases where there was no conflict in the evidence, the courts of this State have held such stipulations in contracts of this kind to be reasonable, as a question of law (Telegraph Company v. Culberson, 79 Texas, 65; Lester v. Telegraph Company, 84 Texas, 313); but we do not understand any of these cases to hold, that where a part or all of the time called for in the contract has expired before the injured party acquires knowledge of the fact that the telegram had been sent him, that the jury would not be authorized to find such stipulation to be unreasonable as applied to the facts of that particular case.

District Judge Spear, in a well reasoned opinion in the case of Johnson v. Western Union Telegraph Company, 33 Federal Reporter, 362, states the case of a plaintiff who is a farmer residing six miles in the country, and has business engagements important to him, but unimportant to his correspondent, in Omaha; he leaves his address at the telegraph office, and calls repeatedly for his telegram; is informed there is nothing for him; the telegraph company wires the Omaha firm that there is no such man as the plaintiff; they drop the matter; not receiving his telegram, he drops it; after the expiration of the time he discovers the injury done him; and under such circumstances holds, that this stipulation as to time in which the claim for damages should be presented would be unreasonable, and with this reasoning we concur. See Thomp. on Electricity, sec. 294.

It has, however, been held by the St. Louis Court of Appeals, that

where the whole time has not elapsed before knowledge is received, that it then becomes a question as to whether or not, under all the circumstances, sufficient time remains. Thomp. on Law of Electricity, secs. 250, 255. This decision seems to us also to be sound.

In a number of cases in this State it has been held, that the reasonableness of similar provisions in a contract of this kind with a common carrier for the shipment of live stock is a question for the decision of the jury under the circumstances of the particular case. Railway v. Childers, 1 Texas Civ. App., 302.

Where the time in which the claim for damage is to be presented is fixed by the contract, the court might well decide it to be reasonable, as in the cases referred to above; but where the injured party has been deprived of a portion of the time he should have had under his contract in which to make his claim, and the evidence raises the question as to whether or not the time that remained was reasonably sufficient to enable him to present his claim within the time called for therein, we think the issue should be submitted to the jury under appropriate instructions, to decide whether the contract was reasonable as applied to the facts of that particular case. For this error in the charge, the judgment of the court below must be reversed as to the Western Union Telegraph Company; and we believe no useful purpose could be subserved by a discussion of the other errors assigned by it, as they are not of a nature that will likely arise upon another trial.

The Gulf, Colorado & Santa Fe Railway Company complains, (1) that inasmuch as it received the telegram at Purcell, in the Chickasaw Nation, to be transmitted to Ardmore in the same Nation, the jurisdiction of the Circuit and District Courts for the United States for the Northern District of Texas, the Western District of Arkansas, and the District of Kansas, alone have jurisdiction of this case as to it. The act of Congress relied upon to sustain this contention is as follows: "That the United States Circuit and District Courts for the Northern District of Texas, the Western District of Arkansas, and the District of Kansas, and such other courts as may be authorized by Congress, shall have, without reference to the amount in controversy, concurrent jurisdiction over all controversies arising between said Gulf, Colorado & Santa Fe Railway Company and the nations and tribes through whose territory said railway shall be constructed. Said courts shall have like jurisdiction, without reference to the amount in controversy, over all controversies arising between the inhabitants of said nations or tribes and said railway company; and the civil jurisdiction of said courts is hereby extended within the limits of said Indian Territory, without distinction as to citizenship of the parties, so far as may be necessary to carry out the provisions of this act." Without considering the validity of this act of Congress in any of its features, we are of opinion that there is nothing therein which seeks to give exclu-

sive jurisdiction to any of said courts, or to deprive any other court of any jurisdiction which it would otherwise have. It only gives *concurrent* jurisdiction to the courts therein named.

Appellant also contends, that the courts of this State have the right to refuse to entertain jurisdiction of cases of this kind, and that upon principles of sound policy they should exercise this right. To support this view, the case of Morris v. Railway, 78 Texas, 17, is strenuously relied upon. In that case it will be noted that both parties were nonresidents of this State. In this case the appellant is a Texas corporation, and we see no good reason why the courts of this State should refuse relief even to a nonresident against it in a meritorious case; but in this case it is by no means clear that appellee has lost his citizenship in this State. It is true, he is residing in the Indian Territory, but he went from this State, and he does not seem to have become a member of any of the Indian tribes by marriage, as in the Morris case. In the Morris case, the court below refused to entertain jurisdiction, and our Supreme Court sustained it in such refusal. In this case the court below assumed jurisdiction, and we see no good reason to question the validity of its judgment on account thereof. Should a citizen of some other State or country seek to hold the Western Union Telegraph Company (it not being a Texas corporation) in our courts upon a cause of action of this kind arising outside of this State, the Morris case would go far toward holding that the proper course would be for our courts to refuse to entertain jurisdiction of such case.

The Gulf, Colorado & Santa Fe Railway Company presents the proposition, " that unless the cause of action is recognized by the State or country where the wrongful act or omission occurred, no cause of action can be maintained thereon in this State, for in such case no cause of action exists;" and contends, that because the courts of the Chickasaw Nation can afford no redress in cases of this kind, appellee has no remedy anywhere. Appellee's right of action arose as well out of the contract made by said appellant to transmit and deliver said message, as it did out of the obligation incumbent upon it in the performance of its duties to the public, on receipt of the message, to transmit and deliver it with dispatch. We do not understand from the statement of facts that contracts of this kind are *illegal* in the Chickasaw Nation, in the sense of being prohibited by its laws; but the evidence only goes to the extent of showing that its courts have not been authorized to afford a remedy in such cases. If we should hold this contract illegal according to the laws of that Nation, we would, upon the same evidence, be required to hold all contracts made therein for the payment of money or the performance of obligations, except in a few specified cases, illegal. We believe that this has never been regarded as the law applicable to ordinary contracts

made in that country, and we would not feel authorized in so holding, except upon the clearest convictions of its correctness.

In 2 Kent's Commentaries, 13 ed., 462, it is said: "Remedies upon contracts and their incidents are regulated and pursued according to the law of the place where the action is instituted, and the lex loci has no application. The lex loci acts upon the right; the lex fori on the remedy." This we understand to be the generally accepted doctrine. If then it be conceded that the laws of the Chickasaw Nation have application to others than its citizens, can it be said that the mere failure of their courts to be authorized to afford a remedy in such cases will deprive the injured party, in case of violation of a contract made therein, of all remedy everywhere? We believe not, and that in such cases the injured party can enforce his rights according to the remedies provided by the country where the defendant may be found.

But if we treat this case as sounding purely in tort, we are not prepared to hold that the position of appellant is well taken, although the cases of Carter v. Goode, 50 Arkansas, 156, and Holland v. Park, 7 Tennessee (Peck), 151, would seem to go far in this direction. We believe the most that can be said from the record in this case is, that the laws of the Chickasaw Nation fail to authorize its courts to furnish a remedy in such cases, and do not go to the extent of making it lawful for persons to be guilty of negligence in the performance of a duty imposed upon them by law therein.

In Willis v. Railway, 61 Texas, 433, it is said: "The rules governing suits arising out of torts committed in a locality other than the government where the redress is sought are about these, as deduced from the authorities upon the subject: Where the action is transitory, and is based on personal injuries recognized as such by universal law, the suit may be brought wherever the aggressor is found, irrespective of the provisions of the local law, or whether there be any law at all in force at the place where the wrong was committed." Citing Rorer on Interstate Law, 154, 155. Without approving this statement of the law to the extent of holding that a cause of action in such cases would exist irrespective of the provisions of the local law, if the local law changed what is termed the universal law and made the act complained of lawful in that jurisdiction, we believe the rule laid down to be sound in cases where there is a simple failure to provide a remedy, without making the act lawful.

The courts of this State have held, that a plaintiff in cases of this kind has a right of action under what may be termed general or universal law, and that the measure of damages under such law is that administered in the court below; and we are of opinion, that inasmuch as it is not shown by the record that parties living in the Indian Territory are prohibited by the laws of that country from seeking relief, provided they can find the defendant in a jurisdiction which affords a remedy in such cases, and

inasmuch as the appellant is a Texas corporation, and inasmuch as the contract with which it identified itself by receiving and undertaking to transmit and deliver the message was entered into by its connecting line in this State, we believe that our courts should not withhold redress for its violation.

As we find no error in any of the assignments interposed by the Gulf, Colorado & Santa Fe Railway Company, we are of opinion that the judgment against it for $1000 should be affirmed, provided appellee, within thirty days, shall file in this court a release of all claim against the Western Union Telegraph Company, and dismiss this suit as to it; otherwise, the judgment of the court below must be reversed and remanded as to both appellants on account of the error committed as to the telegraph company. We do not wish to be understood as approving the practice adopted by the jury in attempting to apportion the damage between the defendants, as was done in this case; but we believe the Gulf, Colorado & Santa Fe Railway Company is in no position to complain of this, nor has it attempted to do so.

Delivered March 9, 1893.

A motion for rehearing was overruled; and appellee having filed a remittitur as to the Western Union Telegraph Company, in compliance with the opinion, the judgment as to it was reversed and case dismissed, and affirmed as to appellant the Gulf, Colorado & Santa Fe Railway Company.