LION BONDING & SURETY COMPANY, APPELLEE, V. CAPITAL FIRE INSURANCE COMPANY ET AL., APPELLEES; FARMERS & MERCHANTS BANK, APPELLANT.*

FILED APRIL 17, 1914. No. 17,689.

1. **Insurance Companies:** CONVERSION: EVIDENCE. If the agent of an insurance company in the management and control of its financial affairs buys school warrants with the funds of the company, this does not of itself prove that the agent had converted the money of the company to his own use, in the absence of any evidence that the directors of the company were ignorant of such purchase or had made any objection thereto.

2. ————: LOANS: EVIDENCE. If such agent applies to a bank for a loan to his company, and the loan is made and the money placed to the credit of the company in its account with the bank, and the company duly notified of such credit, the fact that the note representing the loan was signed by the agent individually, and not in the name of the company, will not of itself overcome the positive and otherwise uncontradicted evidence of the cashier of the bank that the loan was made to the company and solely upon its credit.

3. ————: ————: FRAUD: SUBROGATION. It appears that the cashier of the bank had reason to suppose that the agent of the insurance

———

*June 22, 1914. Judgment modified. "Decree of district court against the Farmers & Merchants Bank reversed, and cause as to the bank dismissed."

company procured this credit in the bank to the account of his company for the purpose of imposing upon the state insurance department. The insurance company, being the principal in this transaction, cannot predicate a cause of action against the bank thereon, and the plaintiff, who is seeking to be subrogated to the rights of the bank, has no greater right.

4. **Appeal: TRIAL DE NOVO.** Upon appeal in an action in equity this court is required to try the case *de novo* without reference to the decision of the trial court. Upon the evidence discussed in the opinion, it is found that there is no cause of action against the defendant bank.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Reversed and dismissed.*

*Stewart, Williams & Brown,* for appellant.

*J. C. McNerney, E. J. Clements,* and *George W. Berge,* contra.

SEDGWICK, J.

The defendant, George W. Losey, was secretary and treasurer of the defendant corporation, the Capital Fire Insurance Company, from some time in the year 1908 to some time in the year 1911. In October, 1909, he executed a promissory note for the sum of $3,000 to the defendant, the Farmers & Merchants Bank, and caused the money obtained thereon to be credited to the account of the insurance company. Afterwards, in February, 1910, this note became 'due and was canceled by the bank and the amount charged to the account of the insurance company. The plaintiff, the Lion Bonding & Surety Company, a corporation doing business under the laws of this state, with its principal office in the city of Omaha, gave the said insurance company its bond, guaranteeing that company against pecuniary loss by any act of larceny or embezzlement on the part of the said Losey while in the service of the said insurance company. In January, 1911, the insurance company made claim against the plaintiff that the said Losey had embezzled money of the insurance company, and upon such claim obtained from the plaintiff the sum

of $2,000, as surety for Losey.  Afterwards the plaintiff began this action in the district court for Lancaster county against the said bank, making the said insurance company and the said Losey parties defendant therein.   The plaintiff alleged in his petition that the "said George W. Losey was personally indebted to said Farmers and Merchants Bank upon his promissory note in the sum of $3,000, and on or about said February 1, 1910, the said defendant Farmers and Merchants Bank, without any lawful authority so to do, and well knowing that the money so on deposit in said bank in the name and to the account of the defendant Capital Fire Insurance Company was then the money and property of said Capital Fire Insurance Company, and not the money or property of the said George W. Losey, with the knowledge, consent and connivance of the said George W. Losey, wrongfully and unlawfully took and applied of the money of the said Capital Fire Insurance Company, so on deposit in said bank as aforesaid, the sum of $3,000 to the payment of the aforesaid note of said George W. Losey, and wrongfully and unlawfully converted to its own use the money and property of said Capital Fire Insurance Company, so on deposit as aforesaid, to the amount and in the sum of $3,000, without the consent of the said Capital Fire Insurance Company, and has ever since refused to pay the same to said Capital Fire Insurance Company or to any person for said Capital Fire Insurance Company, and said sum of $3,000, has been ever since February 1, 1910, due and owing, and is now due and owing said Capital Fire Insurance Company from said Farmers and Merchants Bank.   *   *   * That by reason of the aforesaid wrongful acts of the defendant George W. Losey while under bond furnished for him by plaintiff, as aforesaid, guaranteeing his fidelity and honesty to the defendant Capital Fire Insurance Company, whereby plaintiff was compelled to and did pay the sum of $2,000 in satisfaction of its liability thereunder, there is now due and owing plaintiff from said George W. Losey the sum of $2,000, with interest thereon at 7 per cent. from June 9, 1911, and by reason of the payment

by plaintiff to defendant Capital Fire Insurance Company of the said sum of $2,000, as aforesaid, and by reason of the provisions of aforesaid bond, plaintiff is in equity and good conscience entitled to be subrogated to all the rights of the defendant Capital Fire Insurance Company against the defendant Farmers and Merchants Bank to the extent and in the amount of $2,000, with interest thereon at 7 per cent. from June 9, 1911, arising and existing in favor of said Capital Fire Insurance Company and against said Farmers and Merchants Bank by reason of the wrongful conversion by it of the money of said Capital Fire Insurance Company on deposit, as aforesaid, and the plaintiff is entitled to a judgment against said Farmers and Merchants Bank for the said sum of $2,000, with interest from June 9, 1911."

The plaintiff asked for a decree "that the said Capital Fire Insurance Company now has a cause of action against said George W. Losey and said Farmers and Merchants Bank, for the recovery of said sum of $3,000; that plaintiff, by reason of its payment of $2,000 to the Capital Fire Insurance Company upon breach of its bond given on behalf of defendant George W. Losey, as aforesaid, is entitled to be and is subrogated to all the rights of the defendant Capital Fire Insurance Company against the defendant Farmers and Merchants Bank for the money and funds of said Capital Fire Insurance Company so wrongfully converted to its own use by the said Farmers and Merchants Bank, aforesaid, to the amount and in the sum of $2,000, with interest thereon from June 9, 1911, and that plaintiff have judgment against the said defendants George W. Losey and Farmers and Merchants Bank of Lincoln, Nebraska, for the sum of $2,000, with interest from June 9, 1911, and costs of suit," and for general equitable relief.

The insurance company answered, alleging that the amount that the defendant Losey embezzled from it was $5,132.81, including the said $3,000 alleged to have been wrongfully paid to Losey by the defendant bank, and "that the $2,000 paid by the plaintiff to this defendant, as alleged

in the petition, was so paid for and on account of a shortage other than that created by the conversion of defendant's deposits by the Farmers and Merchants Bank, and for a release of plaintiff from any claim of liability for said $3,000, and it was then and there understood and agreed that the plaintiff should not and did not pay any part of said $3,000, but that defendant should look to said bank for the payment thereof, and not to the plaintiff."

The bank answered, admitting the incorporation of the plaintiff, and that it furnished the bond as alleged; admitted the allegations of the incorporation and business of the insurance company and that the defendant Losey was the secretary and treasurer during the time alleged; admitted that the defendant Losey deposited the money of the insurance company during the year 1909 and a part of the year 1910, and "drew money from such deposit account with this defendant as treasurer of such insurance company," and denied all allegations of the plaintiff's petition and the cross-petition of the insurance company.

Afterwards the controversy between the insurance company and the plaintiff was adjusted by stipulation and the cause proceeded against the defendant bank. The trial court found in favor of the plaintiff and the insurance company, and entered a decree against the bank in favor of the plaintiff for $1,068.05, and a decree against the bank in favor of the insurance company for $2,136.10, being the amount of the said $3,000, and interest thereon, and the bank has appealed.

Mr. Losey was the secretary and treasurer of the insurance company. He appears to have been in the full management of its investments and financial affairs generally. There is no evidence to the contrary. He had misappropriated the funds of the company. If this was suspected by the officers of his company, it does not appear that any of the officers of the bank had any knowledge of any misconduct of that kind on the part of Mr. Losey. It affirmatively appears without contradiction that Mr. Probasco, the cashier of the defendant bank, had no knowledge or information that Mr. Losey was in default with

his company or was in any way neglecting or mismanaging its business. It appears that Mr. Losey had invested some of the assets of his company in school warrants, and that he understood that the inspector of the state insurance department would not approve of the investments and would not recognize them as assets of the company. In order to make a showing of the assets of the company that would be satisfactory to the inspector, Mr. Losey devised the plan of borrowing $3,000 of the defendant bank and leaving the money in the bank, intending that the inspector should inquire of the bank as to the amount of money of the insurance company there on deposit. To carry out this plan, he borrowed $3,000 and placed it to the credit of the company in the bank. He appears to have given his individual note for the $3,000. He represented to Mr. Probasco that the company would need the money only a few days, and the note was given on demand. The money remained in the bank to the credit of the insurance company for about 60 days, when the note was canceled, and the $3,000 charged to the bank, the interest being paid in cash. If this is the whole explanation of the transaction, the insurance company was not injured. Even if Losey had borrowed the money personally, and so obtained a credit to the account of the insurance company, and that same credit was afterwards absorbed in canceling the loan, the financial condition of the insurance company would be unaffected by the whole transaction.

It is contended, however, that Losey was "short in his accounts" with his company, and borrowed this money on his own credit to make good that shortgage; that he had used the money of the company to purchase the school warrants on his own account, and that his company did not own the warrants and had no knowledge of them. There is no evidence to support this contention. The evidence, so far as it goes, tends to show that the warrants were bought in the interest of the company. The fact that they were paid for by checks drawn on the company's account does not of itself tend to prove that Losey had or intended to convert the warrants to his individual

use without the knowledge or consent of the company. It is equally consistent with the view that they were bought for and held by the company. These warrants were at other times pledged as security for money loaned by this bank to the insurance company, and otherwise treated as the property of the company. The dealings with the warrants were not done in Losey's name, nor in the name of the company, but in the name of the Conservative Investment Company, and there is no evidence as to who constituted or owned the latter company. Mr. Probasco understood at the time, from declarations of Losey and the nature of the transaction through his bank, that the insurance company was the promoter and owner of the investment company, and that the business that was being transacted in the name of this latter company was in reality the business of the insurance company. He had no notice that Losey was then in default, if that was the fact, and the business had been carried on in a similar way long before it is claimed by any one that any default had occurred on the part of Mr. Losey.

There is no doubt under this evidence that this money was loaned to the insurance company. Mr. Probasco so testifies, and the bank books show that it was credited to the account of the company, and so stood until the note was canceled and that item balanced. The note was given December 15, 1909, and $600 in cash was deposited to the account of the insurance company at that time. December 31 the bank rendered a statement to the insurance company which shows a credit on December 15 of the $3,000, in addition to the cash deposit. When the note was given the deposit slip was delivered to the insurance company showing a deposit of currency, $600, "checks N," $3,000, total $3,600. It must be presumed that the officers of the insurance company, who controlled its business, knew that the company had received this credit on account of this note. The evidence is that no question was raised by the insurance company in regard to this transaction until the commencement of this suit, more than two years thereafter. In January, 1911, after Losey

had left the company, the new officers of the company called at the bank to investigate, but the evidence does not show that even then there was any intimation that the insurance company should, for any reason, be credited with the loan and not be charged with its payment. If Mr. Losey was a defaulter at that time and desired to have this $3,000 appear in the company's account so as to cover up the default and satisfy his superior officers, it is clear that Mr. Probasco was not aware of any such fact, or of any such purpose on the part of Mr. Losey. Mr. Probasco understood that he was loaning to the company; he knew of no other explanation of the fact that the money was placed to the credit of the company. He was the principal witness in the case. He testified as a witness for the plaintiff, and also as witness for the defendant, and was examined and cross-examined by all the parties interested. The matters now in dispute rest almost entirely upon his testimony. He made no attempt to shield himself, nor to favor the interests of the bank that he represented. His whole evidence shows him to be a candid and truthful witness. Mr. Losey told him that the state insurance department objected to the warrants as assets of the insurance company, and that the intention in borrowing this money was to increase the apparent cash of the insurance company and so satisfy the department. Mr. Probasco conceded upon the witness-stand that this appears to him now to be wrong, and he made no attempt to justify himself in consenting to so deceive the department. He protested that he was not interested in the matter at the time, and did not realize that he was assisting the insurance company in imposing upon the authorities. This excuse cannot of course change the situation. The bank must be held to have assisted the insurance company in practicing this fraud. If he had known that Losey was in default to his company, and so had need to borrow upon his own responsibility to make good that default, such a circumstance would have tended to show that the money was loaned to Losey and not to the bank. The note was signed by Losey individually. This fact alone is not sufficient to

overcome the positive evidence of Probasco, and the fact that the money was credited to the company without any reason known to Probasco for doing so, unless the money was loaned to the company. Losey had a reason for borrowing the money in the name of his company and giving his individual note therefor. It swelled the assets of his company without an apparent corresponding increase of its liabilities. If the officer of the insurance department should inquire as to the liabilities of the company to the bank, which it does not appear that he did, he would be effectually imposed upon. This was fraudulent on Losey's part, and was not prevented by Probasco, but it was, as Probasco supposed, for the benefit of the company only, and does not tend to prove that the money was in fact loaned upon the personal responsibility of Losey. It does not appear to be necessary to determine whether the bank under these circumstances must be held to be in equal fault with the insurance company. If the action was by the bank to recover this money from the insurance company, that question would become important. The insurance company was represented in this transaction by its secretary and treasurer, who was in apparent charge and full control of the interests of the insurance company. The company obtained the apparent control of this money for a short time, and then relinquished it and the credit was canceled. The insurance company was the promoter and beneficiary of the fraud, and, even if it had been damaged by the transaction, would have no legal claim against the bank by reason thereof. The bonding company asks to be subrogated to the rights of the insurance company, and, as that company had no cause of action against the bank, the bonding company now fails also. There is no substantial conflict in the evidence, and there is no equity in the plaintiff's favor.

The decree of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.

LETTON, ROSE and FAWCETT, JJ., not sitting.