LEONARD MELICK

*v.*

LIBERTY TRUST COMPANY et al.

[Decided August 14th, 1915.]

1. Complainant loaned money on bond and mortgage, and his attorney, authorized to receive the interest and principal, to endorse receipt of money on the bond, and to cancel the mortgage of record, returned to complainant the bond and a certified copy of the mortgage, and forged a *fac simile* of the bond and a transfer of the bond and mortgage to one who transferred the forged bond and the original mortgage to the defendant, an innocent purchaser, for their face value.—*Held*, that the complainant had the better title.

2. When a mortgagee leaves the bond and mortgage with his attorney, who forges a *fac simile* of the bond, and transfers it and the original mortgage to a *bona fide* purchaser, and returns the original bond and a certified copy of the mortgage to the mortgagee, the latter is not estopped to foreclose the mortgage.

*Mr. Frank Benjamin,* for the complainant.

*Mr. Archibald F. Slingerland,* for the defendant Liberty Trust Company.

STEVENS, V. C.

On October 28th, 1910, George F. Perry and his wife executed a bond and mortgage to complainant to secure the payment of $4,000. The money was lent through the instrumentality of one Roland D. Crocker, an attorney. The mortgagor paid the semi-annual interest to Crocker, who transmitted it to complainant. In March, 1914, Crocker wrote to complainant telling him that the mortgagor wanted to pay off the mortgage and he asked complainant to bring him the papers. This complainant did, early in April. About the 1st of May, Mrs. Melick called at Crocker's office and received the interest. Crocker told her that Mr. Perry "hadn't showed up yet but would in a few days." On

May 17th she went to his office but did not find him. On May 25th she went again and Crocker then gave her the bond, telling her that he couldn't find the mortgage but would send it. On May 29th he sent a certified copy. He said in the letter accompanying it that the original mortgage had been mailed but must have been sent to the wrong address.

In point of fact what Crocker did was this: He forged a *fac simile* of the bond and a transfer of the bond and mortgage to one J. H. Hurlbut. Hurlbut had first borrowed money from the Liberty Trust Company on the strength of this transfer and had then, paying off the loan, transferred the forged bond and the original mortgage to the company for their face value. The company was an innocent purchaser for value. The question is, which shall suffer from Crocker's crime, the complainant or the trust company?

The situation is this: Complainant holds the original bond and the certified copy of the mortgage. The Liberty Trust Company holds the forged bond, the original mortgage and the forged transfer. It seems to me very plain that the complainant has the better title. In the first place, he has never parted with the ownership or possession of the primary security, the bond. Crocker's possession during the few weeks he had the actual custody of it was complainant's possession. In the second place, he never transferred the mortgage or authorized anyone else to transfer it. The forged instrument did not transfer it, and, consequently, he still remains its legal owner. The trust company has only a forged bond, which binds nobody, and the manual possession of the mortgage without title; for the forged transfer confers none.

Counsel for the trust company contends, however, that complainant's conduct in entrusting Crocker with the custody of the papers estops him from setting up his title.

The utmost limit of the authority conferred by complainant upon Crocker, inferable from the handing of the papers and from prior acts, was to receive the principal from the mortgagor; to endorse an acknowledgment of the receipt of the money on the bond and to authorize the register to cancel the mortgage of record. Assuming, without deciding, that under the circum-

stances disclosed by the evidence such was the authority, it did not authorize Crocker to assign the bond and mortgage, much less to forge an assignment of them. An *agency* to do what he did is therefore out of the question.

On what ground then is there an estoppel? If I hand my mortgages or title deeds to an attorney that he may search the title, or that he may sue on the covenants, or if I hand my securities to my clerk, that he may deposit them in my box, if he forges a transfer or assignment and delivers all the papers, am I estopped from claiming my property? The question seems to answer itself. "Although," says Mr. Pomeroy, in his work on *Equity Jurisprudence,* § *805,*

"fraud is not an essential element of the original conduct working the estoppel, it may with perfect propriety be said that it would be fraudulent for the party to repudiate his conduct and to assert a right or claim in contravention thereof."

Obviously, it is not fraudulent for the complainant to claim to be the owner of the bond which he now has and of which he has never lost possession. Being its owner, he may sue on it; and he may, without fraud, lay claim to the collateral which secures it, and which he has never, by word or act, surrendered. If so, it cannot be fraudulent to insist, as he does, that the mortgage shall be handed over to him. He did not, either designedly or negligently, clothe Crocker with the apparent title and power of disposition (*Morris v. Joyce, 63 N. J. Eq. 554*), unless a title and power of disposition are to be inferred from the bare act of entrusting one's property to someone else for a specified purpose—an inference plainly absurd.

I think complainant is entitled to a decree.