## CENTRAL STATE BANK OF DALLAS v. FIRST STATE BANK OF ABILENE et al. (No. 9406.)

(Court of Civil Appeals of Texas. Dallas. Oct. 10, 1925. Rehearing Denied Nov. 7, 1925.)

I. Banks and banking ⚖️109(I)—Bank held liable on note indorsed by vice president without recourse, where accepted on condition bank would take it up whenever plaintiff needed money.

Bank *held* liable on note indorsed by its vice president without recourse, where he submitted proposition that plaintiff accept note as discounted by his bank on condition that it would take note up from plaintiff at any time it needed the money, and on that condition note was accepted by plaintiff.

2. Banks and banking ⚖️99—Bank's agreement to take up note whenever plaintiff needed the money held supported by consideration.

Agreement by bank that if plaintiff would take up note, indorsed by bank's vice president without recourse, that it would take note up at any time that plaintiff needed the money was supported by consideration where bank received proceeds of note.

3. Banks and banking ⚖️226—Pleadings in suit on note held sufficient to warrant recovery.

In suit on note indorsed without recourse, but which defendant bank agreed to pay whenever plaintiff needed the money, pleading declaring on such collateral agreement and alleging that defendant received proceeds of note *held* sufficient to warrant recovery.

4. Banks and banking ⚖️109(I)—Plaintiff held entitled to recover on note, though representing unauthorized loan by defendant's vice president, where lack of his authority was not shown to be known to plaintiff.

Plaintiff *held* entitled to recover on note indorsed by vice president of defendant without recourse, but which it agreed to pay whenever

plaintiff needed the money, notwithstanding that such note represented an unauthorized loan by vice president, where lack of such authority was not shown to have been known to plaintiff.

5. Banks and banking ⬡99—Under defendant's agreement to take up note whenever plaintiff needed money plaintiff held entitled to interest and attorney's fees in note.

Agreement by defendant, that if plaintiff would take up note indorsed by defendant's vice president without recourse the defendant would take it up from plaintiff whenever it needed the money, was an agreement to take note up under its terms, and hence, in a suit thereon, plaintiff was entitled to recover 10 per cent. interest after maturity and for attorney's fees provided therein.

On Motion for Rehearing.

6. Banks and banking ⬡118—Evidence held to show offer to take up note was offer of bank and not of vice president.

Evidence held·to sustain finding that offer to take up note indorsed without recourse whenever plaintiff needed the money was the offer of bank and not of its vice president who made it.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Action by the First State Bank of Abilene and others against the Central State Bank of Dallas and another. From the judgment, the named defendant appeals. Affirmed.

Love & Rutledge, of Dallas, for appellant.

Dallas Scarborough, of Abilene, and Etheridge, McCormick & Bromberg, of Dallas, for appellees.

JONES, C. J. First State Bank of Abilene, one of the appellees, recovered a judgment in the district court of Dallas county in the sum of $3,448.91, the same being the principal, conventional interest, and attorney fees of 10 per cent. on a note executed by the Empire Drug Company, a corporation, and H. D. Ardrey to appellant, the Central State Bank of Dallas. Judgment was also rendered in favor of appellant against appellee Ardrey in like amount. Ardrey does not appeal from the judgment, and the term "appellee" will hereafter refer to First State Bank of Abilene. The facts under which this recovery was had are as follows:

The Empire Drug Company was a corporation doing business in the city of Dallas and was a customer of appellant. L. H. Squires was an active vice president of appellant bank; he was also a stockholder in the Empire Drug Company. Appellant bank, through resolution passed by its board of directors, created a discount committee, which, alone, was empowered in behalf of the bank to pass upon applications for loans of $5,000 or more. Squires was a member of this discount committee. The note in question was executed by the parties on the 19th

of July, 1921, and at that time the indebtedness of the Empire Drug Company to appellant bank amounted to $7,000. Squires, alone, represented the bank in the execution of said note. At the time same was executed the appellee bank had to its credit in appellant bank a sum of money largely in excess of the amount of the note. Immediately on the execution of the note, Squires placed the following indorsement on same: "Without recourse, Central State Bank, by L. H. Squires, Vice President." The said note bore interest after maturity at the rate of 10 per cent. per annum, and the sum of $50.50 was deducted from the note as advance payment of interest, leaving the sum of $2,449.50 as its proceeds, which was placed to the credit of the Empire Drug Company, and, at the same time, a like sum was charged against appellee's said deposit. The note and a debit slip showing this charge were immediately transmitted by letter to Oscar Parker, president of appellee bank, together with a letter, of which the following relates to the matter under inquiry:

"I do not want to impose on you, at all, but I am wondering if you can handle the inclosed note for me for 90 days. It is absolutely good without indorser, and I am sure you know Ardrey, the man who has indorsed it. We also will take it up from you at any time you need the money. I will appreciate you doing this for me, if it will not inconvenience you."

This letter was written on the bank's stationery and was signed, "L. H. Squires, Vice President." When this letter with the inclosures was received by appellee. it credited Central State Bank with the proceeds of the note, and subsequently agreed to a reconciliation of the account kept by appellant, upon which appellee was charged with the purchase price of the note, $2,449.50. The Empire Drug Company, previous to the filing of this suit, went into bankruptcy, and appellee presented its claim in said bankrupt proceedings but received no dividends thereon, and, as a claim against said drug company, it was worthless. Notice was served by appellee on appellant that it needed the money and demand made on appellant to take up the note, which it refused to do. This refusal resulted in the filing of the suit on the alleged collateral agreement of appellant to take up the note.

It is not deemed necessary to discuss separately appellant's various assignments of error presented in the very able brief filed in this case, though they have all been carefully considered.

[1, 2] When this note was executed and accepted by appellant bank through its vice president and indorsed by appellant without recourse, its status was that any subsequent owner or holder could look alone to the mak-

ers of the note for its payment, and, if appellee had accepted the note while this status remained, it would have been bound by this indorsement and could have looked alone to the joint makers of same for its liquidation. The note was the property of appellant when this indorsement was placed thereon, and it remained its property until accepted by appellee. It is true that appellant, through its vice president, charged the proceeds of the note that went immediately to the credit of Empire Drug Company to appellee's account. This was done only on the assumption that appellant would be able to negotiate with appellee the purchase of the note. If appellee had declined to accept the note on the terms submitted, appellant would have been compelled to have restored the account of appellee to its condition before depletion by the charge against it of the proceeds of this note. Appellant did not submit the proposition that appellee accept the note on its status of indorsement without recourse, but, on the contrary, submitted the proposition that appellee accept the note, as discounted by appellant, on the condition that, "We also will take it up from you at any time you need the money." The pronoun "we" in the above quotation from the said letter could only refer to appellant. On this condition, changing the position of appellant as to its liability on the note, and not on its status as presented by the said indorsement, was the note accepted by appellee. That a note indorsed "without recourse" and still owned by the indorser can be made, for a valuable consideration, the subject of an independent agreement, the effect of which may be the destruction of such indorsement, cannot be questioned. In the instant case the consideration was, in its effect, the receipt by appellant of the proceeds of the note. Goldstein v. Union National Bank (Tex. Civ. App.) 216 S. W. 209; Stephens et ux. v. First National Bank of Cleveland (Tex. Civ. App.) 271 S. W. 395; Fisher v. Stevens, 143 Mo. 181, 44 S. W. 769; Heaton v. Myers, 4 Colo. 59; 8 C. J. 198.

[3, 4] The pleading is sufficient to warrant the recovery. In brief, it declares on this collateral agreement as evidenced by the said letter, with the said note as the subject-matter of the agreement, and alleges that appellant received the proceeds of the note. The fact that Squires violated the resolution of the bank, that the loan applied for by the Empire Drug Company could be determined alone by the discount committee, is not shown to have been known to appellee, but, on the contrary, the representations made by Squires in his said letter as to the character of the note would clearly indicate to appellee that same had been properly accepted by appellant.

[5] It is urged by appellant that the recovery in no event could be more than the amount paid by appellee for the note together with legal interest thereon, and that in no event could the recovery be on the note which provided for 10 per cent. interest after maturity and for attorney fees. We cannot agree to this contention. The agreement is that appellant would take up the note, and not that appellant would hold appellee harmless in its purchase of the note or refund to appellee the amount paid for same. "We also will take it up," is an agreement to take the note up under its terms, and the trial court did not err in so construing same. Trabue v. Wade (Tex. Civ. App.) 95 S. W. 616.

We have carefully considered all assignments of error, and are of the opinion that each of same should be overruled and this cause affirmed.

Affirmed.

### On Motion for Rehearing.

[6] In its motion for rehearing, appellant insists that the finding of this court in the original opinion to the effect that the clause in the letter addressed by Squires, vice president of appellant, to Parker, president of appellee, in reference to the said note, to wit, "We also will take it up from you at any time you need the money," was the offer of appellant and not the individual offer of the writer of the letter, is a finding without any evidence to sustain it, and contrary to the evidence in the record. To this contention we cannot agree. Both the said Parker and the said Squires were dead at the time of the trial of this case, and the meaning of this clause must be deduced from its wording and the circumstances existing at the time the letter was written. It was written by the active vice president of appellant, who negotiated the note that the Empire Drug Company executed in favor of appellant, and the negotiation of which was the subject-matter of this letter. The writer signed his name to the letter as vice president. He was writing to the president of appellee in reference to a proposition that concerned appellant, for it was the sole owner of the note at the time the letter was written. It was also written on the bank's regular stationery, and, while the appellant's said vice president owned stock in the Empire Drug Company, this fact is not mentioned in the letter and is not shown to have been known to appellee. This is the status of the record in this respect, and we think the finding about which complaint is made is the only one that could have been made from the circumstances surrounding the writing of the letter.

The motion for rehearing is overruled.