### SLATON STATE BANK v. AMARILLO NAT. BANK.　(No. 2712.)*

(Court of Civil Appeals of Texas. Amarillo. Nov. 3, 1926. Rehearing Denied Dec. 1, 1926.)

1. **Venue** &c⟹14—**Suit on bank's repurchasing agreement held properly brought in county where transaction was consummated by bank's authorized vice president (Rev. St. 1925, art. 1995, subd. 23).**

Under Rev. St. 1925, art. 1995, subd. 23, suit on bank's repurchasing agreement at time of selling notes was properly brought in county, where transaction was consummated by bank's authorized vice president authorized to execute such agreement.

2. **Banks and banking** &c⟹113—**Bank having accepted and disposed of proceeds of notes sold on repurchasing agreement by vice president is estopped to deny liability thereon.**

Where, after active vice president of bank sold notes to another bank under repurchasing agreement, bank thereafter telegraphed purchasing bank to charge their account and credit vice president with portion of proceeds, and checked its books accordingly, it will be *held* to have accepted and disposed of notes sold under such repurchasing agreement, and estopped to deny liability thereon.

3. **Contracts** &c⟹108(2)—**Repurchasing agreement by bank on sale of notes to another bank held not invalid on ground of public policy.**

Repurchasing agreement, executed by bank at time of selling notes to another bank, *held* not invalid on ground of public policy, in view of evidence showing that purchasing bank had no intention or any interest in preventing notes from appearing as liabilities of selling bank.

Hall, C. J., dissenting in part.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by the Amarillo National Bank against the Slaton State Bank. Judgment for plaintiff, and defendant appeals. Affirmed.

R. A. Baldwin, of Slaton, for appellant.
A. A. Lumpkin, of Amarillo, for appellee.

RANDOLPH, J. This suit was filed in the district court of Potter county by the Amarillo National Bank against the Slaton State Bank. From a judgment of that court adverse to it, the Slaton bank has appealed to this court. The parties herein will be styled as in the trial court.

The plaintiff alleged in its petition, substantially, that on or about the 1st of September, 1925, J. K. Wood, who was on that date, prior thereto, and subsequent thereto, the duly authorized vice president of the defendant bank, came to Amarillo and to plaintiff's banking house, bringing with him two certain promissory notes with a view of selling them to the plaintiff, or making some arrangement with plaintiff by which the defendant bank might procure money on or for the notes, and, while in plaintiff's bank in Amarillo, the said J. K. Wood, active vice president of defendant bank as aforesaid, and at the time acting for and on behalf of the defendant bank, as its duly authorized officer and agent in said transaction, proposed to sell the said two notes, which belonged to the defendant bank, to plaintiff under an agreement to repurchase same on stated dates, or to take said notes up, authorizing plaintiff to charge said notes to the account of the defendant on the repurchase dates mentioned, if the defendant should have funds on deposit with plaintiff bank on said repurchase dates, sufficient to take care of said two notes and, if not, the defendant agreed to take up said notes upon request made by plaintiff; that said proposition so made by said J. K. Wood, as active vice president and duly authorized agent of the defendant bank, was in writing, and substantially as follows:

"Sept. 1, 1925.

"The Amarillo National Bank, Amarillo, Tex. —Gentlemen: Inclosed find two notes, one for $5,500, signed by W. A. Wood, in favor of himself, that matures Nov. 15, 1925; the other for

$4,500; signed by J. F. Anton and R. G. Murray, due Oct. 27, 1925.

"The first note is indorsed by W. A. Wood, J. K. Wood, and the Slaton State Bank, the latter indorsement being without recourse.

"Please credit our account with the proceeds of these notes, and we hereby agree to repurchase the first mentioned note on Nov. 1, 1925, and the other on Oct. 27, 1925, at which date you are authorized, to charge same to the account of the Slaton State Bank, if we have sufficient funds with you to take care of same; if not, we agree to take notes upon request.

"Yours very truly,
        "The Slaton State Bank,
        "By J. W. Wood, Vice President."

Plaintiff further alleged that the written proposition so made by the defendant, through its active vice president and agent, J. K. Wood, as above set out, was duly considered by the plaintiff, and by it accepted, and thereupon the said two notes referred to and described in said written proposition of September 1, 1925, were delivered by said J. K. Wood to plaintiff; that is to say, one note in the principal sum of $5,500 dated at Slaton, Tex., August 15, 1925, signed by W. A. Wood, and indorsed in blank by W. A. Wood and J. K. Wood, and also indorsed without recourse by the Slaton State Bank, said indorsement of the Slaton State Bank being made by J. K. Wood, its vice president, payable 90 days after date, and payable to the order of W. A. Wood, the signer thereof, at the Slaton State Bank, in the town of Slaton, Lubbock county, Tex., with interest from maturity at the rate of 10 per cent. per annum, and providing, if said notes should not be paid at maturity, and should be placed in the hands of an attorney for collection, or if suit thereon should be had, or collected through a probate court, 10 per cent. additional on the amount due thereon should be paid as attorney's fees, the makers, signers, indorsers and guarantors of said note severally waiving presentment for payment, demand, notice, etc., and waiving diligence in bringing suit, and agreeing to all extensions, etc.; and one other note, whch is known as the Anton note, and which is not further described, because same was taken up in accordance with the provisions of the written repurchase agreement.

The plaintiff further alleges that said written proposition was accepted by it, and the two notes were indorsed to it for a valuable consideration paid by plaintiff, to wit, the sum of $9,900.41, which said sum represented the full value of said two notes, less $99.50 interest, which was deducted from the face value thereof, and the defendant was given credit on the books of the plaintiff for said sum of $9,900.41, which defendant has by check and otherwise withdrawn from plaintiff bank.

Plaintiff further alleges the payment of the Anton note, and eliminates it from the case; that the said Wood note was not paid, although demanded of defendant, to plaintiff's damage, $6,500; that defendant was bound and obligated by said repurchase agreement to pay plaintiff the full value of said Wood note; that defendant had no funds with plaintiff on November 1, 1925, nor at any time subsequent thereto, out of which said Wood note could be paid, or which said note could be charged against.

Plaintiff's petition closes with the following prayer for relief:

"Wherefore, premises considered, plaintiff prays for citation and service thereof on the defendant in terms of law, and that, upon final hearing hereof, plaintiff have and recover judgment against the defendant for a sum of money equal to the amount due upon said $5,500 note, including principal, interest and attorney's fees, in accordance with the terms and provisions thereof, for costs of suit, and for general and special, legal and equitable, relief."

Defendant filed its plea of privilege to be sued in the county of its legal residence, Lubbock county, Tex.

Plaintiff filed its controverting affidavit, and defendant filed answer thereto. Defendant's answer to the merits contains general and special exceptions, general denial, and plea of non est factum. No question arises on the sufficiency of the plea of privilege.

We are confronted with 32 propositions, based upon 19 assignments of error, which are presented in the appellant's brief. We cannot possibly spare the time or space considering each in the order in which they come, but we will discuss such questions only as we think are material to the disposition of the appeal in this case.

As stated, in reply to defendant's plea of privilege, the plaintiff has filed its controverting affidavit, in which it contends, the defendant being a corporation, that this suit was based upon a written contract, as alleged in plaintiff's petition, by the terms of which the defendant agreed to repurchase the notes therein mentioned, referred to and made a part of the controverting affidavit; that by virtue of and under article 1995, subd. 23, of the Revised Civil Statutes 1925, it is provided that "suits against a private corporation, association or joint stock company may be brought in any county in which the cause of action, or a part thereof, arose," and that the contract alleged in plaintiff's petition, executed by the defendant, was made by the defendant in Potter county, Tex., and that by reason thereof the venue of the cause is properly laid in Potter county; that the allegation in defendant's plea of privilege that none of the exceptions to the exclusive venue in the county of one's residence, mentioned in the statutes, is untrue.

Upon the trial of the issues involved and presented under the plea of privilege and the controverting affidavit, the following facts were established by the evidence, and such evidence, by agreement of counsel, was also

considered by the trial judge in his hearing on the merits of the case:

The Slaton bank is a banking corporation, organized under the laws of the state of Texas, with its principal office for the transaction of its business at Slaton, Lubbock county, Tex.; that J. K. Wood was, at the time of the transaction which resulted in the making of the contract sued on, said bank's active vice president, managing its business; that said J. K. Wood owned 175 of the 250 shares of the capital stock of defendant bank; that said Wood went to Amarillo, Tex., and presented to the Amarillo bank the two notes described above, and attempted to sell and discount them to said Amarillo bank; that the Amarillo bank agreed to take the notes on the condition that the Slaton bank would execute and deliver to it the repurchase agreement set out above; that J. K. Wood agreed to this, and did then and there make and deliver to the Amarillo bank the repurchasing agreement sued on in the beginning, in which that bank transacted its business in the city of Amarillo, Potter county, Tex., and turned over to said bank the two notes and repurchase agreement above described.

[1] While the plea of privilege presents a prima facie right of defendant to have the case transferred to Lubbock county, yet, under the allegations of the controverting affidavit, and the proof submitted, the trial court correctly overruled it, for the reason that the evidence clearly and beyond controversy shows that the cause of action arose in Potter county. The proposition was made by Wood and accepted by the bank upon the condition it interposed, and the transaction was fully closed in Potter county. Lakeside Irrigation Co. v. W. C. Hedrick Constr. Co. (Tex. Civ. App.) 230 S. W. 1057; Early-Foster Co. v. A. P. Moore's Sons (Tex. Civ. App.) 230 S. W. 787; Lummus Cotton Gin Sales Co. v. Mills (Tex. Civ. App.) 233 S. W. 126; Sealy Oil Co. v. Barronian (Tex. Civ. App.) 282 S. W. 315; Owens Refining Co. v. Schweitzer (Tex. Civ. App.) 275 S. W. 232; White Point Dev. Co. v. Seagraves (Tex. Civ. App.) 278 S. W. 855.

The case having been tried upon its merits, was the judgment of the trial court warranted by the law and the evidence introduced? J. K. Wood was the active vice president of the defendant, managing its business. The plaintiff bank had received from the defendant bank a signature certificate, giving the names and official signatures of its officers, among which was that of J. K. Wood, its vice president. There was also in evidence a copy of a resolution passed by the board of directors of defendant bank, and duly entered on the minutes of said bank, of April 29, 1925, in words as follows:

"By unanimous vote the vice president and cashier was authorized to rediscount, sell without recourse, and to borrow money and to pledge

288 S.W.—41

therein any of the bills receivable that may now or hereafter belong to the said bank that may seem necessary to them for the best interests of said bank."

At the time of the occurrence of the transaction sued on herein, the Amarillo bank did not know that this resolution was in existence, but, regardless of this want of knowledge of the officers of the plaintiff bank, this resolution having been duly passed by the directors, and having been entered on their minutes, the question is brought before us: Did such resolution authorize J. K. Wood, as such vice president, to execute such repurchase agreement for the defendant bank? The writer is of the opinion that it did.

The Amarillo bank did not accept the notes on the status of their indorsement "without recourse," but demanded an independent agreement from defendant bank that it would permit it to be charged against funds to defendant bank's credit in plaintiff bank, or that defendant bank would, on named dates, take up such notes. The fact that the notes were indorsed without recourse does not preclude the making of this independent agreement. Central State Bank v. First State Bank (Tex. Civ. App.) 276 S. W. 941, writ denied.

It appears from the evidence that the W. A. Wood note had never been in the Slaton bank, and that it was apparently a forgery. The father of J. K. Wood testified that he did not execute it, or authorize its execution, and this is not controverted. But that fact did not militate against the legality of the instrument upon which the Amarillo bank relied, the repurchase agreement. The transfer of the two notes to the Amarillo bank operated merely as constituting them collateral security. Washington County State Bank v. Central Bank & Trust Co. (Tex. Civ. App.) 168 S. W. 456; Central State Bank v. First State Bank, supra.

But, should it be conceded that the resolution of the board of directors did not authorize its vice president to conclude the repurchasing agreement with the Amarillo bank, there is another and conclusive reason why the trial court's judgment should be affirmed, which we will now discuss.

As stated, when the Amarillo bank concluded its deal with J. K. Wood by accepting the two notes and the repurchase agreement, it immediately credited the Slaton bank with the amount of the face value of the notes, less a small interest charge, and mailed to the defendant bank a credit slip showing such amount deposited. This slip the cashier of defendant bank denies receiving, but the transaction was noted in the records of the Slaton bank. On September 2, 1925, a debit slip was made by the Slaton bank, debiting the Amarillo bank with $9,900.41, being the exact amount of the credit given to defendant bank on September 1, 1925, on the books of

Amarillo bank. The cashier of the defendant bank testified:

"When banks correspond in the manner interrogated about, they have a way of reconciliating their various statements. It is done just like personal statements. In other words, if the Amarillo National Bank credits the Slaton bank with $9,900.41, if we get notice of it, we debit the Amarillo National Bank with that amount on our general ledger. Then in due course of time we pass statements between each other so as to show how our accounts stand, and, if there is any error made in the credit between the Amarillo bank and tne Slaton bank, we rectify the error. The credit that was given by the Amarillo National Bank to the Slaton State Bank, and the debit given by the Slaton State Bank to the Amarillo National Bank was rectified by reconciliation statement. * * * When we learned that the Amarillo National Bank had credited us with $9,900.41, we had to make a credit slip to Amarillo's account for that amount of money to offset the credit they had given. It went on our general ledger, showing their account between the Amarillo National Bank and the Slaton State Bank as shown by our debit slip."

Carl George, assistant cashier of defendant bank, on September 3, 1925, received a telegram from J. K. Wood, dated at Corsicana, Tex., in words as follows:

"Arrived eleven Wire Amarillo National Bank credit my account fiftyseven hundred dollars Charge my account J. K. Wood."

Acting upon this telegram from Wood, the Slaton bank sent the Amarillo National Bank, on September 3, 1925, the following telegram:

"Charge our account and credit J. K. Wood fiftyseven hundred dollars.
"Slaton State Bank."

On receipt of this telegram, the Amarillo National Bank credited J. K. Wood's account with the $5,700, and charged that amount to the Slaton State Bank, as requested, and such amount so credited to Wood was by him checked out of the Amarillo bank. When the telegram to the Amarillo bank was sent, the Slaton bank credited the Amarillo National Bank with the sum of $5,700 on its books.

[2] Under these facts we hold that the Slaton State Bank accepted and disposed of the proceeds of the repurchase agreement, and is estopped to deny liability thereon. First Guaranty State Bank v. Liberty State Bank (Tex. Civ. App.) 260 S. W. 660; Farmers' State Bank v. First State Bank (Tex. Civ. App.) 260 S. W. 664; Goldstein v. Union National Bank, 109 Tex. 555, 213 S. W. 584; Kendrick State Bank v. First National Bank (D. C.) 206 F. 940.

It is true that the Slaton State Bank has shown that the money so received by it was obtained by it for the individual account of J. K. Wood, and this is set up as establishing the fact that it did not receive any profit from the transaction. If the vice president of the Slaton State Bank obtained the money by fraud, or illegally, he obtained it after it had been placed to the credit of defendant bank, and when it was the property of said bank, and he secured the money through the direction of the Slaton bank given to the Amarillo bank to pay it to him.

The Slaton bank had elected J. K. Wood as its vice president; had directed him to manage its business; and then finally secured the money from the Amarillo bank for him. We think this is essentially a case wherein, leaving out the legal phrases, we should apply the equitable maxim "that he who trusts most must suffer most."

Since the preparation by me of the foregoing opinion Judge HALL has filed his dissenting opinion, which, I believe, is based upon a misapprehension of the record, and that his findings upon the vital issues discussed by him are not supported by the record.

[3] In the first place, I did not discuss the question of the invalidity of the transaction here in controversy on the ground of public policy, for the reason that I do not believe that such question has any place in the discussion of this record, and will give my reasons for this statement.

The Amarillo National Bank was doing business in the city of Amarillo, and had, as one of its correspondents, the Slaton State Bank. That bank had supplied the Amarillo bank with the genuine signatures of its officers, including that of the managing vice president, J. K. Wood. Some time after this Wood appeared in the Amarillo bank, and wanted to negotiate the sale of the two notes in controversy. These notes were indorsed by the Slaton State Bank "without recourse." As to what transpired on that occasion we have the testimony of two of the Amarillo bank's officers, Mr. Charles Ware, vice president, and Mr. S. D. Vaughn, cashier.

On the question of "effort" to deceive the banking department by the indorsement of the note "without recourse," Mr. Vaughn, after testifying that he was acquainted with J. K. Wood, and that he had been informed by the Slaton State Bank of the signature of Mr. Wood, and was familiar with it at that time, that he was dealing with Mr. Wood as the vice president of the Slaton State Bank, under and by virtue of the signature identification, says:

"He (J. K. Wood) applied to the Amarillo National Bank for a loan for the Slaton State Bank, and offered to put up these two notes mentioned—the Anton note for $4,500, and the W. A. Wood note for $5,500. He wanted us to rediscount them, and we told him we would rediscount them with the understanding that he would give us an agreement to repurchase, and so he agreed to do, and he signed the agreement of repurchase that is submitted here in the case. * * * After that instrument was executed by Mr. J. K. Wood, as vice president of the Slaton bank, the Amarillo National Bank credited the account of the Slaton State Bank with the two

notes mentioned, less discount. One of the notes I refer to is the J. F. Anton note of $4,500, and the other is the W. A. Wood note of $5,500. We gave Mr. J. K. Wood a duplicate of the deposit slip. J. K. Wood, the vice president of the Slaton State Bank, delivered to us this W. A. Wood note with the Anton note and the repurchase agreement. * * * To give the defendant the Slaton State Bank credit for the proceeds of those notes and repurchase agreement, we credited their account on the general ledger. In other words, the Slaton State Bank, on September 1, 1925, received credit for $9,900.41, which was the proceeds of the Anton note and the W. A. Wood note, less the discount. This fund was placed to the credit of the Slaton State Bank, subject to their check. I have a statement here from our general ledger concerning that matter. This is a statement of the whole account. The defendant, Slaton State Bank, received credit for the proceeds of the two notes mentioned in the repurchasing agreement in the Amarillo National Bank on the date September 1, 1925, in the amount of $9,900.41. As shown by the general ledger of our bank, the defendant Slaton State Bank withdrew those funds. * * * In other words, to make a long matter short, the Slaton State Bank received credit on the books of the Amarillo National Bank for the proceeds of the Anton note and the W. A. Wood note, and we held that fund in the Amarillo National Bank to the credit of the defendant, the Slaton State Bank, until they had withdrawn all those funds. * * * The repurchase agreement sued on was executed in Amarillo, signed by the Slaton State Bank by J. K. Wood, vice president, and was accepted by the Amarillo National Bank in Amarillo. * * * I have been in the banking business something like 15 or 18 years, and have had occasion to study up and become informed as to the law applying 'to the loan merchant and the law applying to negotiable instruments. It might be that a restricted indorsement or the use of the words 'without recourse' in connection with an indorsement on a note means that the indorser is not agreeing to pay the note, and is merely transferring it. That is often done. I don't know that such an indorsement 'without recourse' necessarily implies that the indorser is not agreeing to pay the note. I know that usually an indorser who indorses 'without recourse' is not liable. You ask what my idea is of my liability to Mr. Lumpkin if I transfer a note with the indorsement, 'S. D. Vaughn. Without recourse.' That kind of an indorsement might be made many times for a certain purpose. If it is desired that it shall not show as a liability on the bank's books, they show it without recourse, but at the same time the bank might be held liable by a repurchase agreement or some other kind of an agreement. I did not know then that, when defendant indorsed the note 'without recourse,' and at the same instant signed a repurchase agreement, one simply annulled the other. I understood it this way: That he wanted to indorse that 'without recourse,' so it would not show in the liabilities of the bank, but we wanted protection, and, if he wanted to handle it that way, it was satisfactory with us. I don't know whether they carried their records in such a way as that the transaction would still show in the liabilities of the bank when they indorsed the note 'without recourse,' and at the same time executed a re-

purchase agreement. It did not change the liability of the bank to handle the transaction that way. I understand as a banker that there is nothing about that note to show the liability of the Slaton State Bank for the payment of it; and, if there is any liability on the note, it must exist by virtue of some instrument not connected with, or attached to, the note, and that I claim is the repurchase agreement he executed at that time."

Mr. R. C. Ware, vice president of the Amarillo National Bank, nowhere testified to any knowledge that the notes taken by the Amarillo bank were indorsed "without recourse" for the purpose of deceiving the banking department.

It will be borne in mind also that the record nowhere discloses that the officers of the Amarillo National Bank had any notice that the W. A. Wood note was a forgery, and in making the loan to J. K. Wood for the Slaton State Bank they required and relied upon the repurchasing agreement. Mr. Ware, the vice president of that bank, testified:

"Under the agreement we reached, we were to let the Slaton State Bank have the money on these notes. The agreement was made in the Amarillo National Bank in Amarillo, Potter county, Tex. The Amarillo National Bank accepted the agreement from the Slaton State Bank in Amarillo, Potter county, Tex., and by virtue of that agreement received the two notes mentioned in the agreement, and gave the defendant, Slaton State Bank, the proceeds of the two notes, less the accumulated interest or discount, and upon our books defendant received such credit. The Slaton State Bank checked those funds from the Amarillo National Bank, and closed out the account within about six weeks or two months, or eight or ten weeks after that. As a matter of fact, the account was closed out some time after the maturity of this last note."

I think it is clear from the foregoing testimony that the Amarillo National Bank had no purpose of assisting in deceiving the banking department; that the purpose solely and only was to make a loan to the Slaton State Bank, having confidence in that bank repaying the money under the repurchase agreement; and that the transaction, so far as the Amarillo National Bank is concerned, was not criminal.

I cannot take the space to attempt to fully reply to Judge HALL'S somewhat lengthy opinion in detail, but, in addition to quoting the testimony of the bank's officers, I also wish to call attention to a few other matters in which I think Judge HALL'S opinion is wrong. He says that the Slaton State Bank never received any of the proceeds of the forged note. I again reiterate that the money was deposited by the Amarillo National Bank to the credit of the Slaton State Bank, and was paid out by the Amarillo bank upon a telegram from the Slaton bank. This was an appropriation of the money by the Slaton bank, and it matters not

that J. K. Wood ultimately received the proceeds of the money. He received it by the order of the Slaton bank, and hence the Slaton bank appropriated every penny of it.

The plaintiff's petition alleges the transaction, alleges that the money was deposited by it to the credit of the Slaton State Bank, and was by that bank checked out. While this pleading was not labeled "estoppel," the facts pleaded are tantamount to the pleading of estoppel.

While we have not discussed every question raised by the appellant's propositions, we have given them due consideration, and hereby affirm the judgment of the trial court.

JACKSON, J. (concurring in part). The testimony in the record does not, in my opinion, disclose facts and circumstances relative to the repurchasing agreement executed to appellee bank on behalf of appellant bank by its active vice president, J. K. Wood, which makes said repurchasing agreement illegal, and therefore void and unenforceable by appellee. The testimony does not show that the appellee bank had any interest in preventing the notes from appearing as liabilities of the appellant bank nor that there was any agreement that said notes should not appear as liabilities against the appellant bank, nor that the facts of the transaction should not be revealed, nor any design on the part of appellee that the indorsing of the notes "without recourse" and giving the repurchasing agreement were to be used for any illegal purpose. The most that may be said from the record is that the cashier of the appellee bank knew that the transaction could or would be so handled by the appellant bank as to keep the notes from appearing as liabilities of said bank. The money was not to be used for an illegal purpose.

In the United States it is held, by the weight of authority, "that the mere knowledge of the seller of goods or services, or of the vendor or the lessor of property, that the buyer intends an illegal use of them, is no defense to an action for the price or for rent, provided he did nothing in furtherance of the unlawful purpose." 13 C. J. par. 476, p. 517; 2 Page on Contracts, par. 1109.

The right to recover money loaned is controlled by the same rule applicable to the sale of goods, and recovery is permitted where the lender is chargeable only with a knowledge that the money may be used in an illegal way. 13 C. J. p. 519, par. 479.

In Futch v. Sanger (Tex. Civ. App.) 163 S. W. 597, the court says:

"It has been held in this state that the mere knowledge that money was to be used by the borrower for an illegal purpose when loaned will not, without further act in furtherance thereof, defeat the lender's right to recovery. See Cleveland v. Taylor [49 Tex. Civ. App. 496] 108 S. W. 1037; Oliphant v. Markham, 79 Tex. 547, 15 S. W. 569, 23 Am. St. Rep. 363; Lewis

v. Alexander, 51 Tex. 578. See, also, to the same effect, Jackson v. City Nat. Bank, 125 Ind. 347, 25 N. E. 430, 9 L. R. A. 657."

In this case a writ of error was denied by the Supreme Court, 170 S. W. xvii. The case was again before the Court of Civil Appeals (Sanger v. Futch, 208 S. W. 681), and the court again announced the same doctrine.

Appellee pleaded that on September 1, 1925, the date of the repurchasing agreement, it gave credit on its books to the appellant for the sum of $9,900.41, the value of the two notes, less interest that would accrue thereon, and that appellant, by check and otherwise, withdrew said sum from appellee bank, and that, by the payment of the proceeds of said notes to appellant, it became liable to appellee for the face value of the $5,500 Wood note.

The record discloses that the J. F. Anton note was paid by him in due course with a check drawn on appellant bank and forwarded by it to appellee.

Appellant and appellee were correspondent banks. It is admitted that J. K. Wood was the active vice president of appellant; that appellant had furnished to appellee the genuine signature of J. K. Wood, and advised appellee to recognize his signature "in payment of funds and the transaction of other business for our account"; that on September 1, 1925, appellee, as a result of placing with it said notes indorsed "without recourse" and the repurchasing agreement, gave appellant credit for $9,900.41; that J. K. Wood, on his return to Slaton on September 2d, advised appellant bank that he had been to Amarillo, and had sold the J. F. Anton note to appellee, and secured a personal loan of $5,500, and asked that the proper entries be made on the books of the appellant bank; that appellant the same day charged or debited appellee with $9,900.41 credited "bills receivable" with the Anton note of $4,500, making the proper interest charge for said note, and credited the account of J. K. Wood with $5,500, the Wood note, making the proper interest charge against Wood, issued to J. K. Wood a deposit slip for $5,500; that on September 3d appellant's assistant cashier received a telegram from J. K. Wood, reading:

"Wire Amarillo National credit my account fifty-seven hundred dollars Charge my account."

The cashier of the appellant bank testified, "Our bank acted upon the advice contained in that telegram," and, on the same day, sent the appellee the following telegram:

"Charge our account and credit J. K. Wood fifty-seven hundred dollars.
                    "Slaton State Bank."

The testimony is that, upon receipt of said telegram, appellee credited J. K. Wood with $5,700, and charged the account of the ap-

pellant with said sum, and at the time the appellant sent the telegram to the appellee it credited the appellee with said sum, and charged it to the account of J. K. Wood; that J. K. Wood had on deposit with appellant a sufficient sum in excess of the $5,500 to take care of the $5,700; that on August 31st he gave his check to appellant on appellee for $5,500, which was paid by appellee September 4, 1925.

Neither appellant nor appellee knew at the time of any of the above transactions that the Wood note was a forgery, nor that J. K. Wood was "pulling a deal." The appellee had advanced the money to appellant, and gave it credit therefor. The appellant knew that it had been credited by appellee with the $5,500 Wood note.

For the reasons above stated and the facts recited, I concur in the affirmance of the case.

HALL, C. J. (dissenting). I concur with the majority in the holding that the trial court did not err in overruling the Slaton bank's plea of privilege, but I find myself unable to agree with Judge RANDOLPH in the disposition made of the case, as well as some of the propositions of law announced, and as applied to the uncontroverted facts disclosed by the record.

Judge RANDOLPH'S opinion fully and fairly states the issues tendered by the plaintiff's petition, but does not sufficiently set out the defendant's defenses. So I will make no further statement of the plaintiff's pleadings, but will give the substance of the answer.

The answer of the Slaton bank, as set out in the plea of privilege and controverting affidavit, and made a part of its original answer by reference thereto, interposed the following defenses: First, a general denial, a general exception, and certain special exceptions. It is then alleged that, if the name of the Slaton bank appears on the note for $5,500, either as maker, indorser, acceptor, or guarantor, it is not the act of said bank, nor did defendant bank ever authorize J. K. Wood, or any other officer, to so execute the note or the repurchasing agreement, nor has it adopted or ratified any such illegal acts. It is further alleged that said bank never at any time, or in any manner, ratified either the agreement or the note or its indorsement, and has received no benefit by reason thereof; that the indorsement of said note by Wood, and the execution of the repurchasing agreement, were without authority, and in his own individual interest; that the same was fraudulently done to promote his private and personal ends, and without the knowledge or consent of the said bank, and while acting adversely to and in conflict with the interest of said bank; that said bank never at any time saw, possessed, owned, or claimed any interest, right, or title in or to the alleged $5,500 note, and never negotiated the same, or caused it to be negotiated to the Amarillo bank, or any one else; that said note was a forgery, and the indorsement thereon by Wood, and the execution by him of the repurchasing agreement in the name of said bank, were both unauthorized, and are, therefore, forgeries as to said bank; that said illegal and criminal acts were repudiated by said bank, and its liability therefor was denied as soon as said bank was informed of the transfer of said note and the execution of the repurchasing agreement; that said bank never at any time, through the said Wood or any one authorized so to do, entered into any repurchasing contract in writing or otherwise with the Amarillo bank with reference to said $5,500 note.

The material evidence in this case is not contradicted. It discloses a transaction upon the part of J. K. Wood with the Amarillo bank, which as to him is criminal, and as a result thereof J. K. Wood is now a fugitive from justice. It appears that J. K. Wood owned 175 of the 200 shares of the Slaton bank, was its active managing vice president, and that about August 15, 1925, he forged the name of his father, W. A. Wood, to a note of $5,500, which stipulates in part as follows:

"Ninety days after date, waiving grace, I, we, or either of us, jointly and severally, as principals, promise to pay to the order of himself fifty-five hundred and no/100 dollars, for value received, negotiable and payable without defalcation or discount at Slaton State Bank, Slaton, Lubbock county, Tex.," etc.

It further appears that he forged the name of his father on the back of said note, and at the time of the execution of the repurchasing agreement he forged the name of the Slaton State Bank by indorsing it thereon "without recourse." This note was not drawn upon the regular blank notes of the Slaton bank, and said bank's name as the place of payment was written therein with a typewriter. At the time it was transferred to the Amarillo bank there was nothing upon the note which indicated that it belonged to the Slaton bank, or had ever been in possession of said bank. At the time of its transfer, Wood also transferred another note signed by J. F. Anton, as maker, payable to the Slaton bank, and which, by reason of notations made on it, was clearly the property of the Slaton bank.

W. E. Olive, cashier of the Slaton bank, testified in substance, that his bank knew nothing about the forged note; that the teller's journal of his bank showed that two notes had been handled by J. K. Wood, one for $5,500 and the other for $4,500, signed by J. F. Anton; that all of the entries made upon the books of the Slaton bank with reference to the transaction were made by the employees of the bank under the orders of J. K. Wood; that the Slaton State Bank never received any part of the proceeds of

the forged note, but, upon information from J. K. Wood that he had sold the Anton note to the Amarillo bank, and had negotiated a personal loan of $5,500 with said bank, entries were made under the direction of Wood by the assistant cashier of the Slaton bank, who was subject to Wood's orders, charging the Amarillo bank with $9,900.41, being the total of the W. A. Wood note and the Anton note, less the discount paid the Amarillo bank, and that Wood was credited with the $5,500, less the discount, and that only the proceeds of the Anton note, less the discount, went into the funds of the Slaton State Bank. He further testified that the minute books of the Slaton bank did not show any authority in J. K. Wood, or any other officer, to execute a repurchasing agreement such as the one in suit; that Wood left Slaton September 1, 1925, and came to Amarillo; that, when he returned, he had a conversation with Olive on the morning of September 2d, in which he stated that he had sold the Anton note, and secured a personal loan for $5,500, and under his directions the entries were made on the books of the Slaton bank as detailed by the witness. He denied that J. K. Wood ever had any authority to indorse the note without recourse, and at the same time to execute a repurchasing agreement in the name of the Slaton bank. He stated that the Slaton bank never owned the forged note for $5,500, and that it was never in the possession of said bank; that it never had any communication with the Amarillo bank relative to the note, or the repurchasing agreement, until November 4, 1925, when the witness wrote the Amarillo bank that the Slaton bank knew absolutely nothing about the note; had never owned it, or had any interest in or connection with it, and knew nothing about the repurchasing agreement. This letter was written in reply to a notice from the Amarillo National Bank that the forged note would be due November 1st under the agreement to repurchase.

A resolution by the board of directors of the Slaton bank was introduced in evidence, as follows:

"By unanimous vote the vice president and cashier was authorized to rediscount, sell without recourse, and to borrow money and to pledge thereon any of the bills receivable due said bank that may seem necessary to them for the best interests of said bank."

The cashier of the Amarillo bank testified in part that, about September 1st J. K. Wood applied to the Amarillo bank for a loan to the Slaton bank, and offered to put up the Anton note and the forged note; that he wanted the Amarillo bank to rediscount them; and that the witness told him they would rediscount them with the understanding that Wood would give the Amarillo bank an agreement to repurchase; and that Wood so agreed.

The testimony of this witness shows that the forged note was indorsed "without recourse" in the name of the Slaton bank by Wood, and the agreement to repurchase it was signed in the name of the Slaton bank at the same time and as part of the same transaction.

The cashier further testified, in substance, that, at the time the repurchasing agreement was made, it did not notify the Slaton bank, except through Wood, the active vice president. The repurchasing agreement was dictated by the cashier of the Amarillo bank. The cashier testified with reference to the transaction:

"I know that usually an indorser who indorses 'without recourse' is not liable. That kind of an indorsement might be made many times for a certain purpose, if it is desired that it shall not show as a liability on the bank's books. They indorse it without recourse, but at the same time the bank is held, or might be held liable by a repurchase agreement or some other kind of an agreement. I am referring to a gentlemen's agreement in that, I guess. I did not know then that, when defendant indorsed the note without recourse, and at the same instant signed a repurchase agreement one simply annulled the other. I understood it this way: That he wanted to indorse that (Wood) note without recourse so it would not show in the liabilities of the bank, but we wanted protection, and, if he wanted to handle it that way, it is satisfactory with us. * * * I understand as a banker that there is nothing about that note to show the liability of the Slaton bank for the payment of it, and, if there is any liability on the note, it must exist by virtue of some instrument not connected with or attached to the note, and that I claim is the repurchase agreement he executed at that time. After I dictated to the stenographer this repurchase agreement, and she had typewritten it, Mr. Wood signed it and indorsed the note 'without recourse.'"

According to the foregoing testimony, the note with the qualified indorsement of the Slaton bank, together with the repurchasing agreement which refers to the note although separately written, constitute but one contract. Barber v. Herring (Tex. Com. App.) 229 S. W. 473; Traders' National Bank v. Smith (Tex. Civ. App.) 22 S. W. 1056.

The forged note is the subject-matter of the contract, and the qualified indorsement made by Wood in the name of the bank is a material part of it, and cannot be disregarded in determining the rights of the parties. The Amarillo bank sued upon the repurchasing agreement alone. The forged note is referred to merely for the purpose of showing the measure of its damages for breach of the contract to repurchase. The Amarillo bank, therefore, does not occupy the position of a bona fide holder, and its suit is subject to all the defenses available against the holder of any other nonnegotiable instrument, and the contract must be construed under the general rules relating to the construction of

contracts. The qualified indorsement of the forged note by Wood in the name of the Slaton bank, even if Wood was authorized to so indorse it, made the Slaton bank merely the assignor of the title without subjecting it to such liability as would have followed an indorsement in blank. Revised Statutes, art. 5934, § 38.

It is clear from the foregoing testimony that the purpose of the parties in having the forged note indorsed "without recourse" by the Slaton bank, and, as a part of the same transaction, executing an agreement to repurchase, was to deceive the bank examiner. The qualified indorsement of the note would lead the bank examiner to believe that the Amarillo bank had acquired the note by regular transfer, and that no liability attached to the Slaton bank. It is clear from the evidence that the parties did not intend that the bank examiner should ever see or know of the repurchasing agreement. That was what the cashier of the Amarillo bank termed "a gentlemen's agreement." The sole purpose of this transaction, executed in the manner shown in the record, was to deceive a public official, and that would have been its effect. It is uniformly held that all contracts, the purpose of which is to deceive a public officer in the performance of his duties, are contrary to public policy, and void. Barnsdall v. Owen, 200 F. 519, 118 C. C. A. 623; Kentucky & Indiana Bank v. Globe Bank & Trust Co. (Ky.) 116 S. W. 792; Ong Exchange National Bank v. Clay Center State Bank, 100 Neb. 278, 159 N. W. 409; Lion Bonding, etc., Co. v. Capital Fire Ins. Co., 96 Neb. 51, 146 N. W. 1051; Brooks v. Cooper, 50 N. J. Eq. 761, 26 A. 978, 21 L. R. A. 617, 35 Am. St. Rep. 793; Logan v. Fidelity-Phenix Fire Ins. Co., 161 App. Div. 404, 146 N. Y. S. 678.

In the original opinion, Judge RANDOLPH relies upon the case of Central State Bank v. First State Bank (Tex. Civ. App.) 276 S. W. 941, to sustain the legality of this transaction. In my opinion, that case is not authority for the holding. The Central State Bank of Dallas took the note of the Empire Drug Company, and credited the drug company with the amount, and charged the Abilene bank's deposit with a like amount. At the time the note was executed, Squires, the cashier of the Central bank, indorsed it "without recourse" in the name of his bank. The note and a debit slip were then transmitted by him to the president of the First State Bank of Abilene with a letter, in which he agrees that his bank would take up the note any time the Abilene bank needed the money. The qualified indorsement of the Central bank was no part of the discount contract between the two banks, and was not mentioned by Squires, but he did mention the indorsement of Ardrey upon it. The case is further distinguishable, in that the drug company's note was the property of the Central bank when the indorsement was placed thereon. In the instant case the forged note, according to the uncontradicted testimony, was never the property of the Slaton bank, and the officers of the Slaton bank, except Wood, did not know that such a note was in existence until called upon in November to pay it. Furthermore, in that case it appears that the Central State Bank received the proceeds of the note from the Abilene bank by charging that bank's deposit account with the amount of the note, while in the instant case not one penny of the money represented by the forged note was ever received or used by the Slaton bank. The question of the illegality of the transaction was not raised in that case, and I am not willing to accept it as authority in this controversy. Equity regards the substance, and not the form.

The transaction between Wood and the cashier of the Amarillo bank violates both the letter and spirit of the banking laws of this state. Revised Statutes, art. 499, provides that no officer of a state bank shall have power to indorse, sell, pledge, or hypothecate any note or other obligation received by such corporation for money loaned until such power and authority shall have been given such officer by the board of directors in a regular meeting of the board, a written record of which proceeding shall have first been made upon the minutes of the corporation; and further declares that all such acts done by any officer without such authority shall be null and void.

Revised Statutes, art. 528, makes article 499 more specific by providing:

"No bank organized under the laws of this state shall ever make any bills payable, and no bills shall ever be rediscounted by such bank, except with the consent of the board of directors, said consent to be a matter of record."

It is true that the board of directors of the Slaton bank had passed a resolution authorizing its vice president to discount and sell without recourse, and to borrow money and to pledge thereon any of the bills receivable due said bank that might seem necessary to them, but this authority cannot be extended so as to authorize Wood to rediscount a note which the bank never owned, and it certainly cannot be contended that authority to sell without recourse authorized him to execute a repurchasing agreement, the legal effect of which would be to nullify such a qualified indorsement.

Penal Code 1925, art. 545, provides, in substance, that every officer of any state bank who, without authority from the directors, assigns any note with intent to defraud the bank or any other corporation, or with intent to deceive any officer of such bank or banking and trust company, the banking commissioner, or any examiner, shall be confined in the penitentiary for not less than 5, nor more than 10, years.

Penal Code, art. 547, provides that any such officer who shall do or perform, or assist in doing or performing, any act or transaction prohibited by the provisions of the laws of this state governing such banks, shall be fined or imprisoned.

Penal Code, art. 552, which relates to the statements to be made by state banks upon call of the banking commissioner, provides that, should any officer of any state bank willfully and corruptly make a false statement, he shall be subject to a fine and imprisonment.

It being known to the parties to this transaction that there was a violation of the statutes, and that its purpose was to deceive a public officer, I think the contract is absolutely void, and will not support an action, especially since the trial judge's twelfth finding of fact, supported by uncontroverted testimony, is "that the W. A. Wood note * * * was never owned by the defendant, the Slaton State Bank of Slaton, Tex., as shown by the books of said bank."

Moreover, the contract, when considered in its entirety, and even aside from the element of forgery (which will be discussed later), is rendered void by its repugnant clauses, in this: By the qualified indorsement the Slaton bank says in legal effect that it is not liable, while the legal effect of the agreement to repurchase is to make it liable. These stipulations are repugnant and beyond the possibility of reconciliation. The rule is that repugnant clauses which cannot be reconciled destroy each other, and render the contract void. Tompson v. Waits (Tex. Civ. App.) 159 S. W. 82. These clauses are not merely "apparently repugnant"; they are glaringly inconsistent and conflicting, and are not ambiguous, and for the court to reject one and enforce the other would be the making of a new and entirely different contract which the parties themselves never intended to make, and, since the evidence shows that the inconsistency in the two stipulations was the result of design, deliberation, and an express purpose, and did not result from carelessness in drawing the contract, the rules of construction adopted in Prince v. Frost-Johnson Lumber Co. (Tex. Civ. App.) 250 S. W. 785, should not be applied.

However, if the rule sometimes adopted in such cases, that the first clause is to prevail, and the second to be rejected, is applied in this case, the Amarillo bank cannot recover, because the second paragraph of the agreement to repurchase clearly implies as an existing fact that the forged note was already indorsed by the Slaton bank without recourse when that agreement was written.

Moreover, if the rule of construction that the intent of the parties is to be ascertained from the entire instrument and the surrounding circumstances is to control, still, the Amarillo bank is in no more favorable position because that intent is shown beyond controversy by uncontradicted evidence to have been illegal and against public policy. As said in Amarillo Oil Co. v. Ranch Creek Oil & Gas Co. (Tex. Civ. App.) 271 S. W. 145, 151:

"When the evidence tends to show that the contract sued upon is void for illegality, the matter is fundamental, and it is the duty of the appellate courts to consider it in the absence either of pleading setting up such illegality or of an assignment presenting it in the appellate court, and that, too, whether it is malum in se or malum prohibitum."

The repurchasing agreement was dictated by the cashier of the Amarillo bank. It is therefore the language of that bank, and, if it requires construction at all, it must be construed most strictly against the party who prepared it and who used the language. Security Banking & Investment Co. v. Flanagan (Tex. Civ. App.) 241 S. W. 702; Id. (Tex. Com. App.) 254 S. W. 761; Harding v. Giddings (Tex. Civ. App.) 256 S. W. 305; Pledger v. Business Men's Accident Association (Tex. Com. App.) 228 S. W. 110.

The appellant attacks the fourth finding of the trial court to the effect that the Slaton State Bank, on the 1st day of September, 1925, had and held two certain promissory notes which it desired to rediscount or sell and obtain money thereon, and, acting through its vice president, who was duly authorized to act in such matters, brought said notes (one of them being the forged note) to Amarillo for the purpose of obtaining money thereon. It is insisted that this finding is not supported by the evidence, but is contrary to all the evidence, which shows that the Slaton State Bank never owned or held the discounted note. We think this contention is sound. The forged note was never in possession of the Slaton bank, does not appear upon its books, and the court so found in its twelfth finding of fact. None of the officers of that bank, except J. K. Wood, ever saw the note prior to the transaction in question, or ever heard of its existence. It was not filled out upon one of the bank's blanks, and, at the time the Amarillo bank acquired it, there was nothing upon the face of the note to indicate that the Slaton bank had ever owned or had it in its possession. The cashier of the Amarillo bank admitted that there was no number of the Slaton State Bank on it, or any other notation indicating that that bank had owned it, while the Anton note, negotiated at the same time, bore the number of the Slaton State Bank and other memoranda indicating that it had been owned by that bank. I think this contention should be sustained and the finding set aside because there is no evidence to support it, and because the court held to the contrary in the twelfth finding, which is supported by all the evidence. Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788.

The court further found that the Amarillo bank agreed to purchase from the Slaton bank

both notes, provided the Slaton bank would execute to it a repurchase agreement, and that the Slaton bank, in pursuance thereof, did execute and deliver to the Amarillo bank, for a valuable consideration, the repurchasing agreement. This finding is also contrary to all the evidence, in so far as it relates to the forged note, and appellant's contention should be sustained.

The repurchasing agreement was made by J. K. Wood, acting adversely to the interests of the Slaton bank, and in his own interest, and without the knowledge or consent of the Slaton bank, and it is therefore a forgery as to the Slaton bank. All the evidence shows that the Slaton bank never received any consideration for the execution of the repurchasing agreement, but that the entire consideration went to J. K. Wood. Ferguson v. State, 79 Tex. Cr. R. 641, 187 S. W. 476.

While it is true that the funds were credited by the Amarillo bank to the Slaton bank, and were charged to the Amarillo bank by the Slaton bank upon the latter's books, it is also true that J. K. Wood's individual account was credited at that time with the amount of the forged note, less the discount. This is simply a process of bookkeeping, and the entries were made by the employees of the Slaton bank upon the order of J. K. Wood, and upon his statement to Olive that the money was a personal loan to him by the Amarillo bank. The real facts are, as disclosed by the testimony, that Wood received all of the consideration for the forged note, and that not a penny of it ever moved to the Slaton bank. I think this finding, for the reasons stated, is erroneous.

The W. A. Wood note as to him was a forgery, and the trial court so finds. J. K. Wood, who forged his father's name to the note as maker and indorser, also, as vice president, forged the name of the Slaton bank upon the back of the note, and also to the agreement to repurchase. That the act of J. K. Wood in executing the agreement to repurchase without the authority of the Slaton bank to do so constitutes forgery seems to be settled law. "An agent for some purposes may commit forgery by making or signing an instrument in disobedience of his instructions, or in the improper exercise of his authority. Although a person is authorized to sign the name of another to certain documents, yet, if he signs such name to a false document, it is forgery." 26 C. J. 898, § 7c; State v. Pratt, 3 Pennewill (Del.) 264, 51 A. 604; People v. Dickie, 62 Hun, 400, 17 N. Y. S. 51.

In the original opinion Judge RANDOLPH says:

"At the time of the occurrence of the transaction sued on herein, the Amarillo bank did not know that this resolution was in existence, but, regardless of this want of knowledge of the officers of the plaintiff bank, this resolution having been duly passed by the directors, and having been entered on their minutes, question is brought before us: Did such resolution authorize J. K. Wood, as such vice president, to execute such repurchase agreement for the defendant bank? The writer is of the opinion that it did."

No reason is given, and no authority is cited, upon which the opinion is based. This writer is of the opinion that it did not. The resolution quoted in the original opinion simply authorized the vice president and cashier to rediscount, sell without recourse, etc., "any of the bills receivable that may now or hereafter belong to said bank." The forged note never belonged to the Slaton bank, and was not made payable to it. None of its officers, except J. K. Wood, ever saw it or heard of it until several weeks after the transaction. The Amarillo bank knew as a matter of law that Wood could not rediscount notes without express authority from the board of directors, because the statutes of this state expressly so provide. It therefore had constructive notice of the extent of Wood's authority as set out in the resolution. It had the right to call upon the Slaton bank for a copy of the resolution, and, in the exercise of ordinary care, it should have done so, but it negligently failed to exercise such diligence. If this had been done, they would have known that Wood had no right to execute an agreement to repurchase a note which it had taken from him with a qualified indorsement.

While J. K. Wood, as the active vice president of the Slaton bank, was, in a certain sense, the general agent of that bank, yet, in the matter of discounting, selling, and indorsing the paper of the bank, he was a special agent, with specific authority limited and defined by the terms of the resolution which gave him his power as agent. The effect of Revised Statutes, arts. 499 and 528, requiring the directors to appoint certain agents to perform these duties, and to record such authority upon the minutes of the bank, is to require state banks to create by orders entered upon their minutes certain of its officers to be therein named, not as general, but special, agents to perform the particular duties therein specified. Under the general laws relating to the power of bank officials, third parties would not be necessarily protected. In making the resolution defining the extent of such special agent's authority, a matter of record would evidence an intent on the part of the Legislature to require every person interested to be bound by the extent of the authority and to take notice thereof. Unless the Legislature intended by this provision to protect third parties, as well as the banks, it is difficult to understand why a record showing what officials were appointed and the extent of their authority should be made at all. Such an agency is analogous to that of a municipal officer whose authority is prescribed by statute or ordinance, and the same rule which

governs as to public officers it seems should control in cases of this character. 1 Mechem on Agency (2d Ed.) § 763. The evidence of the conduct of the parties while executing the agreement discloses that the Amarillo bank knew that Wood had no such authority, and, as a matter of law, they knew that the Slaton bank could not authorize him to perform an act criminal in its nature, contrary to express statute, and against public policy. They cannot rely upon an express authority, for there was none, and for the reasons stated are not protected under the rule of apparent authority.

No ratification by the Slaton bank is shown. The evidence shows that as soon as Olive, the cashier of the Slaton bank, was notified that the Amarillo bank held such a note and repurchasing agreement, he immediately repudiated the whole transaction, and emphatically denied the authority of Wood to bind the bank thereby.

The telegram which Wood had the assistant cashier to send on September 3, 1925, as follows: "Charge our account and credit J. K. Wood fifty seven hundred dollars," was not pleaded as estoppel, nor mentioned in any way in the appellee's petition. Without contradiction, the evidence shows that Wood sent a telegram from Corsicana to the assistant cashier of the Slaton bank at Slaton, and that, in obedience to Wood's commands, the assistant cashier wired the Amarillo bank as above stated. No officer or employee of the Slaton bank, except the assistant cashier, knew anything about this telegram. The rule is that an agent cannot ratify his own illegal act so as to bind his principal. Cole v. Bammel, 62 Tex. 108, 114; Citizens' National Bank v. Good Roads Gravel Co. (Tex. Civ. App.) 236 S. W. 153; where it is held that—

"The cashier of national bank did not act as its agent in guaranteeing payment of note, which was never owned or transferred by the bank, and his acts were not ratified because the proceeds of the note passed through the bank without knowledge on the part of the bank of the material facts. * * * Knowledge of cashier of national bank of his own acts in guaranteeing payment of note of third parties, in his own personal interest, and not in the transaction of the bank's business, and hostile to that of the bank, and concealed therefrom, was not imputable to the bank."

Since the resolution of the board of directors did not authorize Wood to execute a repurchasing agreement under the conditions shown, and since Wood could not ratify his own illegal act, there is, as stated, no ratification shown.

Estoppel was not pleaded in this case. The Slaton bank never received a penny of the funds. The entries upon its books, made under the directions of Wood in his own interest and to conceal his own crime, and without the knowledge of any of the other officers of the bank, did not constitute an estoppel. The telegram sent by his orders for the same reason would not constitute estoppel, even if it had been pleaded. Moreover, the Amarillo bank is in no position to insist upon estoppel as a defense. The agreement to repurchase was suggested and dictated by its cashier. It was not only illegal, but ultra vires, and in making the contract under such circumstances the Amarillo bank cannot be heard to say that it acted in good faith. It was bound to know the extent of Wood's authority, and it did know that it was making an illegal contract with him.

Good faith is a necessary element in behalf of one who relies upon estoppel. First National Bank of Tombstone v. Abilene Hotel Co. (Tex. Civ. App.) 103 S. W. 1120; Sourlake Co. v. Jackson, 62 Tex. Civ. App. 140, 130 S. W. 662; 2 Pom. Eq. Jurisp. §§ 810, 812.

In 1 Mechem on Agency (2d Ed.) § 751, it is said:

"It is evident that the rules which have been described were established for the protection of third parties who acted in good faith. Collusion with the agent to take advantage of the apparent at the expense of the real authority, the willful shutting of eyes to restrictions which would otherwise be obvious, or any other practice or device to pervert the rules of law to a purpose not contemplated by them, should be fatal to a recovery. This is especially true where the parties seeking to recover claim the benefit of an apparent authority, a holding out, or any conduct alleged to work an estoppel. Only those who have relief in good faith are entitled to protection."

Revised Statutes, art. 5932, § 23, provides:

"When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

"Precluded," as used in this statute, has been held to mean "estoppel," and does not include ratification or adoption in their strict primary meaning, but only when they involve some of the elements of estoppel. Olsgard v. Lemke, 32 N. D. 551, 156 N. W. 102; 1 Mechem on Agency (2d Ed.) § 364.

The Slaton bank would therefore not be precluded from setting up forgery as a complete defense, unless all of the elements of an estoppel en pais were present. This record is void of any facts which would preclude the Slaton bank from setting up forgery as a defense. The weight of authority is to the effect that one who is in pari delicto in the execution of an illegal contract can neither recover on the contract nor plead estoppel. Having suggested the execution of the "gentlemen's agreement," the Amarillo

bank is in equal fault with Wood, and cannot, therefore, successfully plead estoppel and recover under the rule of apparent authority, because of the absence of good faith. Even though it be held that the Amarillo bank is not in pari delicto with Wood, the transaction upon its face, as well as when viewed in light of the testimony, is ultra vires and illegal. This being true, J. K. Wood, and certainly the Slaton bank, can defend upon that ground (Hartford Fire Ins. Co. v. City of Houston [Tex. Civ. App.] 110 S. W. 973 [affirmed on this point in 102 Tex. 317, 116 S. W. 36, 38]), especially where estoppel is not pleaded (W. C. Bowman Lumber Co. v. Pierson, 110 Tex. 543, 221 S. W. 930, 11 A. L. R. 547).

There is a conflict of authority in other jurisdictions upon the question as to whether forgery may be ratified irrespective of estoppel or a new consideration. 1 Mechem on Agency (2d Ed.) §§ 360–363, 386, 395, 403; Shinew v. First National Bank of Bowling Green, Ohio, 84 Ohio St. 297, 95 N. E. 881, Ann. Cas. 1912C, 587, 36 L. R. A. (N. S.) 1006, and cases cited and note. No new consideration has ever moved to the Slaton bank upon which ratification might be predicated. It is not necessary to cite authorities to sustain the proposition that there can be no ratification of an unauthorized act without full knowledge of all the facts. For a stronger reason there cannot be ratification of a criminal and illegal act. Ratification can stand upon no higher ground than the original authority. Commercial Bank v. Jones, 18 Tex. 825.

The telegram sent by George, the assistant cashier, upon the order of Wood, is the only possible basis upon which the defense of estoppel might be predicated. As has heretofore been shown, this telegram was sent in the name of the Slaton bank upon the orders of Wood without the knowledge of the bank, and at a time when the bank did not know that the money had been secured upon the forged indorsement.

Judge RANDOLPH says in the original opinion (as amended since the greater part of this dissenting opinion was handed to him) that "the plaintiff's petition alleges the transaction, alleges that the money was deposited by it to the credit of the Slaton State Bank, and was by that bank checked out," and holds that these facts sufficiently plead estoppel. I cannot assent to such holding. In State v. Broadway National Bank (Tenn.) 282 S. W. 194, it is held that negligence to work an estoppel must be the proximate cause of leading the complainant into the mistake, and must occur in the same transaction. Judge Randolph so held in Sugg v. Johnson (Tex. Civ. App.) 284 S. W. 705.

It is further held in the Broadway National Bank Case that the maxim that, "where one of two innocent persons must suffer by the acts of a third, he who has enabled such person to occasion the loss must sustain it," does not apply, where crime, and not the negligent act, is the proximate cause of the loss. This rule is followed in Schumann v. Bank of California, 114 Or. 336, 233 P. 860, 37 A. L. R. 1531.

In Guaranty Bank & Trust Co. v. Beaumont Cadillac Co. (Tex. Civ. App.) 218 S. W. 638, the doctrine is announced that, where the manager of a branch plant of a corporation, who had no authority to sign notes or borrow money for the branch business, by means of a note signed in the business name of the corporation, obtained money sufficient to cover in part shortages, and paid said money to the corporation, the corporation which in good faith received the money without notice of the manager's wrongful act is not liable to the payee. Notwithstanding Judge RANDOLPH'S assertion, which is contradicted by the record, that the Slaton bank actually received the money and checked it out, under the rule announced in the case just cited, the Slaton bank would not be liable, even if this suit was based upon the note without the allegation and proof showing that it received the money and used it with notice of all the facts. It is further held in the Beaumont Case that, where actual authority does not exist, apparent authority or estoppel cannot be established by facts known to the party dealing with the agent and relied upon by him in such dealings.

In Jett v. Jett, 171 Ky. 548, 188 S. W. 669, the court, in discussing estoppel by negligence, declares:

"It is likewise true that active negligence may operate as an estoppel; but negligence, to amount to an estoppel, must be in the transaction itself and the proximate cause of leading the party, in whose behalf the right to rely upon it arises, into mistakes."

Judge RANDOLPH'S insistence that the Amarillo bank has pleaded estoppel is not sustained by any authority cited. The rule is that no intendments are made in favor of a plea of estoppel, but it is incumbent on the pleader to aver all facts essential to its existence with particularity and precision. It must be pleaded fully and specifically, charging by direct averment every fact necessary to constitute the estoppel relied upon (El Paso & S. W. Ry. Co. v. Eichel & Weikel [Tex. Civ. App.] 130 S. W. 922, 939), and the rule is applied more strictly when it is sought to estop a corporation by the acts of its officer or agent (Western Union Telegraph Co. v. Cobb [Tex. Civ. App.] 118 S. W. 717; Cleburne St. Ry. Co. v. Barber [Tex. Civ. App.] 180 S. W. 1176; W. C. Bowman Lumber Co. v. Pierson, 110 Tex. 543, 221 S. W. 930; Swayne v. Union Mutual, etc., Co. [Tex. Civ. App.] 49 S. W. 518; Tres Palacios R. I., etc., Co. v. Eidman, 41 Tex. Civ. App. 542, 93 S. W. 698). Tested by these authorities, there is not a syllable in the plaintiff's petition to support the statement that estoppel is pleaded.

Bailey v. Triplett Bros. (Tex. Civ. App.) 286 S. W. 914, was a suit upon a draft or bill of exchange given by Walker to one Collins in payment for cotton as shown by scales tickets which Collins had stolen from Walker's office. Collins had by forgery made himself the apparent owner of the cotton represented by the tickets. Walker had drawn the draft on his partner or principal, Bailey, in the cotton business, payable at a Lubbock bank. Triplett Bros., in good faith, cashed the draft for Collins. Walker discovered the theft and forgery of the scales tickets, and notified the bank not to pay the draft. Triplett Bros. pleaded estoppel by conduct and course of dealing. The trial court rendered a judgment for Triplett Bros. against both Walker and Bailey. A majority of this court affirmed the judgment upon the ground that the draft was a negotiable instrument of which Triplett Bros. were bona fide holders, and upon the theory that Bailey was estopped to set up want of consideration or any other defense by his previous course of dealing in so accepting drafts drawn by his partner on himself. It was shown that Walker was guilty of negligence in the transaction itself, and that such negligence was the proximate cause of the loss. Judge RANDOLPH dissented, holding that the draft was not a negotiable instrument as to Bailey or the bank, and for that reason Bailey could plead the fraud on the part of Collins as a defense, and further held that, as Triplett Bros. had not pleaded estoppel by conduct, they could not rely upon estoppel as a defense. If Bailey, sued upon a nonnegotiable instrument which his partner had the right to draw in that case, could plead fraud, why cannot the Slaton bank, sued upon a nonnegotiable contract to which its name had been forged, plead it in this case? If it was necessary for Triplett Bros. to plead estoppel in that case, is it not necessary for the Amarillo bank to plead it in this case?

In my opinion, the only possible negligence which could be pleaded as an estoppel against the Slaton bank in this case is sending of the telegram by its assistant cashier, George, upon the authority of which the Amarillo bank permitted Wood to withdraw the $5,700. As heretofore shown, the Slaton bank had no knowledge whatever of the sending of such telegram, except such knowledge as might be imputed to it because of the agency of Wood and George. Since Wood was acting in his own interest, adversely to the interest of the bank, in furtherance of his criminal intent, and since George acted under the orders of Wood, his superior officer, it constitutes neither ratification nor estoppel.

Negligence cannot be predicated upon the ground that the bank was negligent in having Wood for its vice president. Judge RANDOLPH seems to predicate his affirmance of the judgment upon these grounds by applying the equitable maxim, as sometimes stated:

"That he who trusts most must suffer most." A correct statement of it is, "Where one of two innocent persons must suffer, he who trusts most must suffer most." If that maxim is applied to the facts of this case, it requires that the judgment of the trial court be reversed and here rendered, because the Amarillo bank, under all the testimony, was not an innocent person in the making of this repurchasing agreement. Moreover, it is the person who "trusted most," in that it entered into a contract with a special agent without information, or in disregard of information, as to the extent of Wood's authority, when the statutes of the state, and ordinary business prudence, demanded that it inquire of Wood's principal as to the extent of his powers. In dealing with a special agent under such circumstances, it acted at its peril, and by reason of its negligence should suffer the consequences. Bourland v. Huffhines (Tex. Civ. App.) 269 S. W. 184, affirmed in (Tex. Com. App.) 280 S. W. 561.

The Slaton State Bank did not trust Wood, because, as required by statute, it limited his authority by a resolution spread upon its minutes for the information of every one dealing with him. It cannot be charged with negligence in trusting him upon the ground that Wood was its vice president. Prior to this time Wood's conduct had been exemplary, and the record shows that he held a majority of the stock, and, in so far as the election of officers is concerned, was for all practical purposes the whole bank. He could elect himself to any office in the bank.

As stated in 1 Mechem, supra, § 749:

"The maxim is often put in the form of 'one of two equally innocent parties,' etc., but for this case it is clear that in general there is no reason for preferring one of two equally innocent parties, and the loss must in general lie where it has fallen. It seems perfectly clear that the incidence of the loss can only be shifted where the parties were not equally innocent, and that before the loss can be thrown upon the principal, he must be shown to have been guilty of some misconduct—that his conduct must have contributed in some way, which reasonable care would have avoided, to the perpetration of the wrong. Certainly the mere employment of an agent in the ordinary way is not such misconduct unless we are prepared to say that one avails himself of this common, useful and supposedly lawful instrumentality at his risk, and this has not hitherto been deemed to be the law."

This is in accordance with Judge Randolph's holding with reference to the estoppel of Sugg by the fraudulent act of Ben Johnson in that case. The employment of an agent is not the proximate cause of the loss of one whom the agent defrauds by criminal act. People's Trust Co. v. Smith, 215 N. Y. 488, 109 N. E. 561, L. R. A. 1916B, 840, Ann. Cas. 1917A, 560, and cases therein cited; Melick v. Liberty Trust Co., 85 N. J. Eq. 29, 95 A. 357; Guaranty Bank & Trust Co. v.

*Beaumont Cadillac Co.* (Tex. Civ. App.) 218 S. W. 638.

Because I think the evidence fails to show any liability on the part of the Slaton bank, I cannot assent to an affirmance of the judgment, and because estoppel was neither pleaded nor shown, I think the judgment should be reversed and the cause remanded for another trial.

### On Motion for Rehearing.

PER CURIAM. Motion for rehearing overruled.

HALL, C. J. I have carefully reviewed the record in the light of appellant's motion for rehearing and persuasive written argument filed therewith, and I am now convinced that the judgment should be reversed and here rendered for the Slaton bank.

Upon further investigation, I find that Revised Statutes, art. 499, which relates to the matter of appointing certain officers of the bank to sell and hypothecate its paper, has been copied from the banking laws of the state of Missouri. Section 1112 of the Revised Statutes of 1909 of Missouri, of which Revised Statutes, art. 499, is a verbatim copy, was discussed and construed by the Supreme Court of Missouri in Union National Bank v. Lyons, 220 Mo. 538, 119 S. W. 540, and it was there held that a resolution by the board of directors of the bank, entered of record in accordance with that article of the statutes, was "notice to the world" of the limitation upon the cashier's authority to act for the bank in the particular transaction.

I insisted, in my original dissenting opinion in this case, that it was contemplated by the statutes that agents so appointed would be special, and not general, agents, and that the Amarillo bank was bound to take notice of the extent of Wood's authority, but was not able to cite any case directly in point, stating, however, that such an agency was analogous to that of a municipal officer whose authority was prescribed by statute or ordinance.

It is said in the Lyons Case:

"There is no pretense that such written authority was given to the cashier to borrow the $10,000 in suit, or to execute the note in question. While the prohibition enjoined against the cashier to do the things mentioned in the statute is not absolute, yet his power to do those things is conditioned upon the board's written authority first spread of record empowering him to do so; and as his power to do those things depends upon a condition precedent, which is prescribed by public statute, all the world must take notice of that limitation of his power and authority, and determine at their own peril whether or not the condition has been complied with and the authority granted. If not, then his acts are unauthorized, null, and void, and not binding upon the bank."

While the majority in the Lyons Case held the bank liable, by reason of the fact that it had received and appropriated to its own use and benefit the money borrowed, no such facts confront us in this case, and the language quoted above would preclude a recovery by the Amarillo bank, in this suit, based alone on the repurchasing agreement. The resolution by the board of directors in the instant case is a "blanket" resolution, and authorizes certain of its officials to rediscount and sell the bank's notes "without recourse." Even if the note had ever belonged to the Slaton bank, the agreement to repurchase the Wood note, if not paid at maturity, exceeds and violates the express terms of the authority given by the directors. This is not a borrowing transaction, but a rediscounting and sale of a note under a contract to repurchase it, if not paid at maturity. Under the rule in the Lyons Case the Amarillo bank is bound by the extent of the authority given to Wood, and had constructive notice of his want of authority to execute the repurchasing agreement sued upon.

Judge RANDOLPH seems to base his affirmance of the judgment in part upon the fact that the Amarillo bank had no knowledge that any resolution by the board of directors of the Slaton bank had been made or entered upon the minutes of that bank. While as a general rule, when the Legislature brings over from a sister state and adopts in identical or similar terms a statute which has been construed in such state, the courts of Texas are not bound by such construction, still they customarily apply the same construction to it, unless some change is made indicating that the Legislature did not intend to adopt it as construed by the courts of the state from which it was copied. Koy v. Schneider, 110 Tex. 369, 218 S. W. 479, 221 S. W. 880. The courts of Texas presume that the Legislature in adopting a statute from a foreign state intended to adopt it with the settled construction given to it prior to its adoption by the courts of the state from which it was borrowed. American Indemnity Co. v. Noble (Tex. Com. App.) 235 S. W. 867; Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S. W. 301; McKnight v. Pecos & Toyah Lake Irr. Co. (Tex. Civ. App.) 207 S. W. 599.

Judge Graves dissented in the Lyons Case from the majority opinion which permitted a recovery even upon the ground therein stated, holding that the bank was not entitled to recover, even though it had received and appropriated the money, and in discussing the statutes under consideration said:

"Prior to 1897 no prohibitions or restrictions were placed upon the cashier. He possessed all the powers ordinarily understood to belong to such officer. There was no restriction in either of the old sections. No records were required to be kept of loans, and other things as now required. Directors were not required to meet

and pass upon loans and to give their consent to the making of loans or borrowing of money, as now required. These statutes clearly imply that the consent of the board of directors must be spread upon the records of the bank. They are required to meet monthly and to keep records. But whether the consent should be made to appear in one way or the other is not material in this case, because consent to the execution of this note or the borrowing of this money was not shown in any manner. By these statutes the cashier of a bank is the bank's agent with limited powers. The limits are placed upon the powers of the agent by public statute, and all persons dealing with such agent, must deal with him at his peril, and, unless the express power be shown for the act, it is of no binding effect. One dealing with an agent of limited powers must affirmatively show that the act relied upon fell within his powers. This plaintiff failed to do. Need we cite cases to a proposition so well founded? These statutes were passed to prevent a cashier from looting banks by borrowing money. Under his general powers, such cashier by statute is given the right to buy and sell exchange. If these statutes are meaningless, as my Brothers seem to indicate, then all a cashier of a bank has to do to loot the bank is to borrow money otherwise than by note, put it with a correspondent bank and sell exchange to himself, and thus loot the bank. These laws were to prevent such conduct. The usual and customary method of procuring money by way of loan is by giving a bill payable. The giving of such a bill by the cashier without the consent of the directors is prohibited. To say that the cashier can borrow money without a note, but cannot borrow it with a note, is trifling with the statute law and its purpose. It would be the height of legislative foolishness to pass a law intended to prohibit a cashier from borrowing money on the bank's note and yet permit him without reserve to borrow without giving the note. The legislative meaning and intent of this law was to prohibit the borrowing of money by the cashier in the name of the bank except upon the consent of the board of directors. The law was not only intended to protect the bank itself, but likewise its depositors. Nor is there injustice in saying that an individual or bank loaning money on a note thus executed without authority should lose it. They know the law. They know the limits of the powers of the agent, the cashier. Dealing with such agent of limited powers, they must know his right to make and receive a loan at their peril. Many harsher statutes than this are unhesitatingly enforced by the courts. If, for increased interest rates by way of discounts, banks or individuals will chance the authority of the limited agent to make the loan, they must do so with the penalties affixed by law. The opinion of my Brother Woodson mops both of these statutes off the books with one fell swoop. Cases wherein there are no such statutes and cases in this state, and such there are, discussing the powers of a bank cashier prior to the act of 1897, can have no binding effect. The purpose of these statutes was to prevent the cashier 'by virtue of his office' from borrowing money. It is a wise legislative act, remedial in character, and should be upheld. We are of opinion that, even on the theory that the plaintiff is suing for money loaned, it has failed to show that the agent of limited powers had the authority to make the loan, and therefore has failed to make its case. But going further, and even conceding, which we do not do, that the plaintiff could recover for money loaned, and that this is such an action, yet it devolves upon plaintiff to prove by competent evidence that the defunct bank actually received that money, and this in our judgment it has failed to do. There is no pretense that this money was sent direct to the defunct Middleton bank. There is no pretense that it was delivered to an authorized agent of such bank. It was, as the witness says, and who does not speak from personal knowledge, but from an alleged examination of books and the customs of the bank, that it was deposited in plaintiff bank to the credit of the Middleton bank, and afterwards paid out on drafts."

So it may be said in the instant case that article 499 is meaningless, unless such bank was required to take notice of the express authority given Wood by the resolution in question, and to so hold it, in my opinion, opened the door for fraud which the very purpose of the act was to close, ad would result in enabling such officers as Wood to loot any bank which they represented.

I again assert that the Slaton bank never received nor appropriated one penny of the proceeds derived from the forged note, and, if the Amarillo bank was required to take notice of the resolution, then it knew that Wood had no authority to execute a repurchasing agreement binding his bank after having sold the note with a qualified forged indorsement.

Section 1112 of Revised Statutes of Missouri 1909 was again considered in the case of Long v. Long, 167 Mo. App. 79, 150 S. W. 1135, where the Missouri Court of Appeals held that the plaintiff acquired no right or title to the note sued upon under his pretended purchase from the bank, because, as the cashier and managing officer of the bank, he had no power to sell the note to himself in the absence of a grant of authority from the board of directors expressed in a formal manner at a regular meeting, as required by said section 1112. The court said:

"In Vansandt v. Hobbs, 84 Mo. App. 628, we construed the statute to denounce as void and not merely voidable any act of a bank cashier in violation of its provisions. The St. Louis Court of Appeals in Hume v. Egan [Eagon] 73 Mo. App. 271, held that the true intent of the statute was to make voidable an act in contravention to its provisions and that an unlawful act of the cashier could be vitalized by a subsequent formal ratification by the board of directors. We think this view of the statute, if countenanced, would have the effect of setting at naught its controlling purpose, and would open the door to the very evils the Legislature intended to suppress. The temptations of the managing officers of banking institutions to speculate with and manipulate to their own advantage the assets intrusted to their care and preservation should be removed or reduced to a minimum, and that was the very object the Legislature had in mind when it provided that they could not sell or pledge any of the property of

the bank without first obtaining authority from the board of directors at a regular meeting, expressed in the most formal way. To say that the board may do afterwards the very thing the statute says in the strongest language must be done before would be to disregard the plain letter and manifest spirit of the law, and to restore in full vigor the abuses the statute was designed to suppress."

This act of the statute was again considered in Musgrove v. Macon County Bank, 187 Mo. App. 483, 174 S. W. 171, in which the court, basing its holding upon the effect of said section 1112, said:

"The attempted sale of the notes was void, and, being void, the check given in payment of the purchase price also was void, since it was not only unsupported by any consideration, but was given in violation of a law of which both parties to the transaction are presumed to have had knowledge. Plaintiffs had no right to give the check and the bank had no right to accept it. We think the bank is in no position to claim that it took the check innocently, not knowing of the fraudulent purpose and ultra vires character of the conduct of the cashier. The check was made payable to the bank, showed on its face that it was for notes purchased from the bank, was accepted by the cashier, entered upon the individual deposit ledger, and kept in the bank by its official custodian of such papers. The funds represented by the check, therefore, came into the bank through the regular and authorized channel, and the fact that afterwards, by fraudulent omissions and manipulations, the cashier concealed the true nature of the transaction from the other officers does not alter the master fact that the bank received an invalid check in pretended payment of property it did not, and could not, sell in the manner pursued."

It is true that in that case the bank was held liable because it received and appropriated the benefits, which, of course, is not the fact in this case. As was said of the check in that case may also be said of the repurchasing agreement in the instant case. It was not supported by any consideration, and was given in violation of a law of which both parties to the transaction are presumed to have had knowledge.

That portion of Judge RANDOLPH'S opinion, in which Judge JACKSON seems to concur, which holds the Slaton bank liable because of the sending of the telegrams by George upon the orders of the fraudulent officer, Wood, upon the theory of ratification or estoppel, is, in my opinion, unsupported either by the facts or the law. As I have previously said, estoppel was not pleaded by the Amarillo bank, and even the most liberal construction of its petition shows that it did not rely upon estoppel, and under the law, as I understand it, estoppel cannot be shown because the fraudulent officer, Wood, is the only party connected with the bank who had any knowledge of the transaction, and all of the bookkeeping entries were made by his employee, George, in accordance with his directions for the purpose of concealing his crime.

Good faith is a necessary element of estoppel in behalf of one who relies upon it as a defense. The good faith in this case is dispelled by the fact that the resolution of the board of directors gave Wood no authority to execute a repurchasing agreement, and the issue of ratification is, therefore, not in the case, because, as held in Cole v. Bammel, 62 Tex. 108, Citizens' National Bank v. Good Roads Gravel Co. (Tex. Civ. App.) 236 S. W. 153, an agent cannot ratify his own illegal act so as to bind his principal. The Missouri Court of Appeals, in Taylor v. Fuqua, 203 Mo. App. 581, 219 S. W. 971, in discussing article 1112 as subsequently amended (Laws 1915, p. 146, § 90), says:

"It is true, as appellant contends, that it is well settled that an act of a cashier of a state bank done in violation of this statute is absolutely void and can confer upon no one any right or title to any note, bond, or other obligation attempted to be disposed of in contravention of its terms; and that where a cashier attempts to perform an act in contravention of the statute, no subsequent action on the part of the board of directors, by way of ratification, can give any validity thereto,"

—citing nine Missouri cases in support of the holding.

As I have endeavored to show in my original dissenting opinion, the weight of authority is to the effect that an act, illegal because in violation of an express statute or rule of public policy performed by an agent, cannot be ratified by the principal, although some cases, even in this state, hold that the principal may be held liable upon the ground of estoppel.

The case of Washington County State Bank v. Central Bank & Trust Co. (Tex. Civ. App.) 168 S. W. 456, cited by Judge RANDOLPH in support of his holding, was an action for money had and received, and the recovery was predicated upon the fact that the defendant bank "had accepted the benefit of a transaction procured by the fraud of its officer," holding that "it will not be permitted to retain the benefit of a transaction and disclaim responsibility because its officer and agent had not been formally authorized to sell and negotiate the paper." Moreover, the Washington County Bank's "entire action in this matter was in good faith, and without a suspicion of culpability in any respect," and "there was nothing to indicate to Harrison that it (Washington County State Bank) was not its owner." So that case is clearly distinguishable from the instant case. No writ of error was sued out, and the case never reached the Supreme Court. Because the opinion holding the defendant bank liable is based upon the facts above stated which are not present in this case, I do not take issue with the general result reached, but I cannot agree with the holding of the El Paso Court

of Civil Appeals that the statute would not apply, since it was a rediscounting transaction, and I further am of the opinion that the sale was void for the want of authority from the board of directors to the president to make the sale of the notes in question. That part of the holding is in conflict with the decision of the Texarkana Court of Appeals in Hull v. Guaranty State Bank, 270 S. W. 191, and also with Rodgers v. Central State Bank & Trust Co. (Tex. Civ. App.) 184 S. W. 620. Moreover, it directly conflicts with what this court said in Lott v. Farmers' State Bank, 254 S. W. 1027, as to the presumption to be indulged in regard to the authority of the bank's president in view of the banking laws of this state which limited his authority.

If, as held in the Missouri cases, supra, the statute makes the resolution to be passed and recorded by the board of directors "notice to the world of the agent's authority," then the issues of apparent authority and implied authority of Wood are not in this case, and both majority opinions rest in part upon such grounds. Neither can the telegrams sent by Carl George upon the order of Wood to the Amarillo bank be held a ratification of Wood's illegal act in executing the agreement to repurchase. The Slaton bank itself could not ratify an act done by its agent in violation of positive statute forbidding such transaction, and declaring it null and void.

In his concurring opinion, Judge JACKSON relies upon that line of authorities which holds that mere knowledge on the part of the plaintiff that money loaned was to be used by the borrower for an illegal purpose, without further act in furtherance thereof, would not defeat the lender's right of recovery, citing Futch v. Sanger (Tex. Civ. App.) 163 S. W. 597. That was a case in which Futch conveyed certain real estate to Sanger, with the knowledge that the latter was engaged in dealing in cotton futures. The deed recited a consideration of $1,500, which, it is alleged, was never paid. The suit was to cancel the deed. A general demurrer was sustained to the petition, and Futch appealed from a judgment entered against him from the demurrer. Judge Rice said:

"If the transaction set out was void on the ground that it was in violation of law or public policy, then the ruling is correct; otherwise it is not."

The transfer of real estate is not ordinarily a violation of law or any rule of public policy. The only illegality alleged in the petition was the fact that Sanger was a gambler in cotton futures, and intended to use the real estate transferred to him as a basis for credit to pursue his illegal occupation. This purpose was collateral to the transfer of the land, and for that reason is clearly distinguishable from the case under consideration. Here the illegal act is the repurchasing agreement. Its

execution was in violation of both positive rule of law and public policy. Instead of being merely collateral, it is the very instrument which the appellee has made the basis of its action for damages. Therefore, in my opinion, none of the authorities cited by Judge JACKSON are applicable to this case.

Since neither the issues of ratification nor estoppel are shown by any of the uncontradicted evidence, and since under the rules of law which govern the controversy there can be neither ratification nor estoppel, I think the judgment should be reversed and here rendered for the appellant.

It seems that the state of Louisiana has a banking law which provides, in effect, that the authority of its officers to sell and rediscount its paper and deal with its assets is in all things similar to article 499 of the Texas statutes and article 1112 of the Missouri statutes. And the Supreme Court of Louisiana held, in Sims v. Athens Bank, 139 La. 324, 71 So. 525, that a pledge of the assets of a bank by the cashier, without authority of a resolution of the board of directors, being in violation of this statute, is invalid, and this view of the effect of the statute governed the opinions of the court in Thomas et al. v. Marine Bank & Trust Co., 157 La. 459, 102 So. 524, and in 156 La. 941, 101 So. 315. Thus it appears that, in both states, where a similar statute has been enacted, the courts have held contrary to the decision of the majority of this court in the instant case.

I therefore respectfully dissent from the action of the majority in affirming the judgment and in overruling the motion for rehearing.